## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

TUSHBABY, INC.,

     Plaintiff,

    v.

THE CORPORATIONS, LIMITED
LIABILITY COMPANIES, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.

Case No.: 24-cv-20941-DSL

### PLAINTIFF'S AMENDED MOTION FOR ENTRY OF
### A PRELIMINARY INJUNCTION AGAINST CERTAIN DEFENDANTS

Plaintiff, TUSHBABY, INC. ("Plaintiff" or "TUSHBABY"), by undersigned counsel and pursuant to 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C § 1651(a), respectfully moves for entry of a preliminary injunction against certain Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A to the Complaint[1] ("Defendants") pursuant to Court's Order to file an amended Motion. *TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 52. In support, Plaintiff respectfully refers the Court to the following Memorandum of Law.[2]

### MEMORANDUM OF LAW

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

---

[1] Per the Court's Order to consolidate Case No. 24-cv-20941 and Case No. 24-cv-21136, Defendants Fleerose, Shiaon, and ZOOYEE are now parties to this action. Plaintiff, pursuant to the Court's Order to file an amended Motion, moves for entry of a preliminary injunction against Defendants, Fleerose, Fruiteam Home, Shiaon, and ZOOYEE. *See TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 52.

[2] Per the Court's Order granting Plaintiff's Motion to Exceed Page Limitation allowing Plaintiff to submit a brief no longer than thirty-six pages, Plaintiff submits this Amended Motion and Memorandum of Law totaling 34 pages. *See TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 8.

Plaintiff brings this action against the Defendants identified on Schedule A to the Complaint for federal copyright infringement (Count I), false designation of origin and passing off (Count II), violation of the Florida Deceptive and Unfair Trade Practices Act (Count III), and common law unfair competition (Count IV). As the Complaint alleges, Defendants promote, advertise, market, distribute, offer for sale, and sell infringing products in connection with Plaintiff's federally registered copyrights and trade dress ("Infringing Products"), through various fully interactive commercial Internet websites operating under at least the online marketplace accounts listed in Schedule A (collectively, the "Defendant Internet Stores"). In short, Defendants run an online intellectual property infringement operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores that appear to sell genuine products but instead sell unauthorized and unlicensed Infringing Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' online intellectual property infringement operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing their identities and the full scope and interworking of their infringement operation.

This Court has personal jurisdiction over Defendants because each Defendant targets Florida residents and has offered to sell, and on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Florida. Specifically, Defendants are reaching out to do business with Florida residents by operating one or more commercial, interactive Internet Stores through which Florida residents can purchase

products being sold in connection with at least Plaintiff's trade dress and copyrights. Defendants directly target unlawful business activities toward consumers in Florida, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Infringing Products in connection with Plaintiff's trade dress and copyrights.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue Preliminary Injunction Order (1) restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Infringing Products; and (2) restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting.

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establish that issuing a preliminary injunction order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of its trade dress and valid federally registered copyright registrations and is the distributor of genuine TUSHBABY products ("TUSHBABY Products"), and Defendants' use of Plaintiff's copyrights and trade dress to sell Infringing Products is causing consumer confusion. In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate here. Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products.

Indeed, 15 U.S.C. § 1116(a) authorizes this Court "to grant injunctions ... to prevent the

violation under subsection (a), (c), or (d) of section 1125...." See also 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Finally, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Intellectual Property and Products

Plaintiff is the registered owner of the various copyrights ("TUSHBABY Copyrights").[3] Declaration of Tammy Rant ("Rant Decl."), ¶ 4. Plaintiff is a leading infant carrier manufacturer and distributor, and has earned a reputation for quality, reliability, and value with respect to the TUSHBABY Products, including the TUSHBABY Hip Seat Baby Carrier, which bears unique and distinctive trade dress consisting of the overall design of the product (the "TUSHBABY Trade Dress"). *Id.*, ¶ 5. Amongst other features, the TUSHBABY Trade Dress features a logo centered on a rounded front pouch with a button snap closure and wraparound black straps, side zippered pockets, and mesh side pockets. Plaintiff is the official source of TUSHBABY Products in the United States. *Id.* Since at least 2018, the TUSHBABY Products embodying the TUSH BABY Trade Dress have been the subject of substantial and continuous marketing and promotion by Plaintiff, including by way of the TUSHBABY Copyrights. Since 2018, the TUSHBABY Hip Seat

---

[3] The TUSHBABY Copyrights are covered by U.S. Copyright Office Registration Nos. VA 2-355-341, VA 2-360-715, VA 2-360-714, VAu 1-511-350, VA 2-360-713, VAu 1-511-354, VAu 1-511-372, and VAu 1-508-280 .

Carrier was featured in coverage by several news outlets, including "Insider," which garnered over 50 million views. After a successful crowdfunding campaign on Kickstarter featuring the TUSHBABY Hip Seat Baby Carrier, TUSHBABY was also featured on "Shark Tank" airing to millions of viewers. Rant Decl., ¶¶ 7-8. Plaintiff has and continues to widely market and promote the TUSHBABY Products in the industry and to consumers, resulting in approximately $33 million in total revenue. Rant Decl., ¶ 8. Plaintiff's promotional efforts include, for example, substantial print media, the TUSHBABY Products' website and social media sites, and point of sale materials, all of which feature at least a portion of the TUSHBABY Copyright Registrations and the TUSHBABY Trade Dress. TUSHBABY's innovation and quality received praise and recognition as a recipient of the "Mom's Choice Award" in 2022. *Id*. The TUSHBABY Hip Seat Carrier has been heavily and widely promoted throughout the United States and the world and has been the subject of extensive third-party press and unsolicited media coverage on social media, particularly TikTok. Influencers with millions of followers in the aggregate have posted and shared glowing reviews and tutorials featuring the TUSHBABY Trade Dress. The extensive and widespread social media coverage has brought the TUSHBABY Trade Dress to a global audience beyond the U.S. consumer. *Id*. As a result, products bearing the TUSHBABY Trade Dress and the TUSHBABY Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from TUSHBABY. *Id*. The success of the TUSHBABY Products has resulted in significant infringement of the intellectual property rights subsisting in and associated with those products. Rant Decl., ¶ 9.

      **B.**    **<u>Defendants' Unlawful and Deceptive Activities</u>**

Plaintiff has identified fully interactive commercial internet stores (in Schedule A) operating under the Defendant online marketplace accounts, which sell Infringing Products by

reference to and/or embodying the TUSHBABY Copyrights and TUSHBABY Trade Dress. Rant Decl., ¶¶ 10-17 & Ex. 2.

Defendants typically facilitate sales by designing the Defendant Internet Stores so they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TUSHBABY Products. Rant Decl., ¶ 21. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. *Id.* They often include images and design elements that make it difficult for consumers to distinguish sites selling infringing products from authorized websites. *Id.*, ¶¶ 21-22. Plaintiff has not licensed or authorized Defendants to use the TUSHBABY Copyrights or TUSHBABY Trade Dress, and none are authorized retailers of genuine TUSHBABY Products. *Id.*, ¶ 19.

Further, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. Rant Decl., ¶ 25. For example, many of Defendants' names and physical addresses used to register the Defendant Internet Stores are incomplete or contain randomly typed letters. *Id.* Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. *Id.* Defendants use these common tactics to conceal the full scope of their intellectual property infringement operation, and to avoid being shut down. *Id.*

Despite operating under multiple fictitious names, there are similarities among the Defendant Internet Stores. Rant Decl., ¶ 26. For example, Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being infringing products, suggesting that the Infringing Products originate from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendant Internet Stores also

include other notable common features, including accepted payment methods, check-out methods, lack of contact information, and the use of the same text and images. *Id.*

## III.  <u>ARGUMENT</u>

Defendants' purposeful, intentional, and unlawful conduct caused, and continues to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the TUSHBABY Copyrights and TUSHBABY Trade Dress. *See* Rant Decl., ¶¶ 28-33. To stop Defendants' sale of Infringing Products, Plaintiff requests that this Court issue a preliminary injunction ordering, among other things, the freezing of Defendants' assets. Without the relief requested, Defendants' unlawful activities will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with material that infringes Plaintiff's intellectual property rights, including the TUSHBABY Copyrights and TUSHBABY Trade Dress, and via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a preliminary injunction order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the TUSHBABY Copyrights and TUSHBABY Trade Dress and preserve the status quo until such time as a hearing can be held.

Plaintiff therefore respectfully requests this Court issue the preliminary injunction order. This Court has original subject matter jurisdiction over the copyright claim under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over the trade dress infringement claim in this

action pursuant to 15 U.S.C. § 1121(a). This Court has original subject matter jurisdiction over the unfair competition claim in this action pursuant to 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the unfair deceptive trade practices claim that arises under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

A.    **This Court May Exercise Personal Jurisdiction Over Defendants.**

Personal jurisdiction exists over Defendants in this Judicial District pursuant to Fla. Stat. § 48.193 (1)(a)(1) and Fl. Stat. § 48.193 (1)(a)(6)(a), or in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores accept orders of Infringing Products from and offer shipping to Florida addresses located in this Judicial District. Indeed, the Southern District of Florida regularly exercises personal jurisdiction over websites using registered copyrights without authorization in connection with the offering for sale and selling of infringing merchandise  to Florida residents over the internet. *Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns, Case No. 21-cv-62335-WPD* (S.D. Fla. Nov. 16, 2021) (preliminary injunction order after granting TRO); *The North Face Apparel Corp., et al. v. The Individuals,  Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No.: 0:22-cv-60193 (S.D. Fla. Jan. 28, 2022) (same).

As detailed in the Complaint and in the Rant Declaration, Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores allow for Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Rant Decl., ¶¶ 15-16. In fact, Exhibit 2 to the Rant Decl. contains copies of screenshots from the Defendant Internet Stores

reflecting marketing, offers to sell, and the ability for consumers to order Infringing Products to the Southern District of Florida, and proof of orders actually placed and accepted by numerous Defendants and sent to the Southern District of Florida. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

**B.**     **Standard for Preliminary Injunction.**

District Courts within this Circuit hold that in order to obtain a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).Plaintiff's evidence establishes all relevant factors.

**C.**     **Plaintiff Will Likely Succeed on Its Claims.**

**1.**     **Plaintiff Will Likely Succeed on Its Copyright Infringement Claim.**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991). Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights in various copyrights for the TUSHBABY Products, including without limitation copyrights covered by the TUSHBABY Copyrights. Rant Decl., ¶ 4; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have made unauthorized copies of Plaintiff's works. Specifically, Defendants also deceive unknowing consumers by using the TUSHBABY Copyrights without authorization, including by offering products for sale by reference to and/or embodying those copyrights on the Defendant Internet Stores. Rant Decl., ¶¶ 21, 23. As a visual representation, Defendants have directly copied Plaintiff's copyrights for the TUSHBABY Products, or, alternatively, Defendants' representations of Plaintiff's copyrights for the TUSHBABY products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the TUSHBABY Products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the TUSHBABY products. As just one example, Defendants deceive unknowing consumers by using the TUSHBABY copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:



**Mass Storage and Ultra-Light and Packs Up Small**

At just less than 1 lb, it adds practically no burden while keeping baby comfortably close. The lightweight fabric and streamlined design make it easy to wear this carrier for hours without fatigue. When not in use, the carrier packs down into an included storage bag no larger than a melon.









**Baby Hip Seat Carrier Stylish Hip Seat Baby Carrier for Newborns to 8-66 lbs Toddlers, Various Pockets, Adjustable Waistband, Ergonomic Non-Slip Toddler Carrier for Breastfeeding & On-The-Go (Black)**

Brand: MOMIDEAL

4.5 ★★★★☆    523 ratings | Search this page

500+ bought in past month

$39⁹⁹

✓prime Overnight

FREE Returns ▾

Coupon | Apply 20% coupon  Shop items ▾ | Terms

With Amazon Business, you would have saved $244.14 in the last year. Create a free account and save up to 2% today.

You could have earned $475.12 in rewards on your Amazon purchases over the past year with 5% back with an Amazon Prime Store Card. Apply now and get a $80 Amazon Gift Card upon approval. Learn more

Color: Black

     



| | |
|---|---|
| $19.99 ✓prime | $46.99 |
| 1 option from $49.99 | $39.99 ✓prime |
| $36.99 ✓prime | $44.99 ✓prime |

| | |
|---|---|
| $44.99 ✓prime | |
| $38.99 ✓prime | |
| $49.99 ✓prime | |

| | |
|---|---|
| **Color** | Black |
| **Material** | Polyester |
| **Brand** | MOMIDEAL |
| **Strap Type** | Shoulder Strap |
| **Product Care Instructions** | Machine Wash |

**About this item**

- Hands-free Baby Carrier: Stylish & Convenient. Our baby hip seat offers convenience and freedom of movement, which is helpful for active kids who want to be up and down constantly. It's a stylish, hands-free alternative to bulky strollers, that's perfect for walks, crowded places like playground or uneven terrain - whether indoors or outdoors! Save Your Energy!!
- Safe Baby Carrier: Secure and Perfect Fit. MOMIDEAL CPC-Certified Baby Hip Seat Carrier provides a stable and non-slip base, ensuring your baby maintains a natural and healthy sitting position. The toddler carrier also features secure buckles, adjustable straps, and strong velcro, providing a reliable fit for your little one. MOMIDEAL-2023Mom's Choice Award Winner. Enjoy peace of mind as your baby nestles comfortably and securely against you.



$39⁹⁹

✓prime Overnight

FREE Returns ▾

**FREE delivery Overnight 7 AM - 11 AM.** Order within 2 hrs 26 mins

Deliver to John - Miami 33133

**In Stock**

Buy 2 or more, save 3%

Discount by Amazon  Terms

Quantity: 1 ▾

Add to Cart

Buy Now

Ships from   Amazon
Sold by   ZOOYEE
Returns   Eligible for Return, Refund or Replacement...
Payment   Secure transaction

✓ See more

☐ Add a gift receipt for easy returns

Add to List

Add to Baby Registry

**amazon** business

Save up to 2% on this product with business-only pricing.

Create a free account





*Infringing Products Sold on Defendant Internet Stores (Above)*
*Compared to*
*Genuine TUSHBABY Product and Exemplary Photographs Comprising the TUSHBABY Copyright*
*Registrations (Below)*















 

Defendants have clearly copied Plaintiff's copyrights without consent.

      **2.**      **<u>TushBaby Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.</u>**

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark or trade dress; and (2) a likelihood of confusion will exist as to the origin of the plaintiff's products. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Moreover, TushBaby must prove: (1) that its trade dress is either inherently distinctive or has acquired secondary meaning in the marketplace; (2) that the features of its trade dress are primarily nonfunctional; and, (3) that the trade dress of the infringing products is confusingly similar.  15 U.S.C. § 1125(a); *AmBrit, Inc.*

v. *Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986).

The concept of trade dress refers to the total image of a product, and may include features such as size, shape, color combinations, texture, graphics, or even particular sales techniques. *Callaway Golf Co. v. Golf Clean, Inc.,* 915 F. Supp. 1206, 1212 (M.D. Fla. 1995) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 765, 112 S. Ct. 2753, 2755, 120 L. Ed. 2d 615 (1992)). Trade dress is protectable under the Lanham Act if it is primarily nonfunctional and is either inherently distinctive or has acquired secondary meaning. *AmBrit,* 812 F.2d at 1538. To determine whether an element or design is nonfunctional, the court can consider the following factors: whether a particular design is superior, whether there are alternative trade dress configurations available, and whether a particular design is comparatively simple or cheap. *Callaway Golf,* 915 F. Supp. at 1213 (citing *Jsaly Co. v. Kraft, Inc.,* 619 F. Supp. 983, 991 (M.D. Fla. 1985)).  As with marks, for Plaintiff's trade dress to have secondary meaning, it must have come, through use, to be identified with a specific source.  *Two Pesos,* 505 U.S. at 772-75.

The TUSHBABY Trade Dress, shown again below, consists of the overall design and configuration of the product featuring a distinctive rounded pouch with a button snap closure and a logo centered on the front, black wraparound straps with various neutral colors for the outer shell material, and the configuration of the side zipper and mesh pockets.






The overall configuration and color combinations of the product - a distinctive rounded pouch with a logo centered on the front, black wrap around straps with various neutral colors for the outer shell material, and the configuration of the pockets - are nonfunctional and arbitrary, serving only to aid in giving the product its distinctive look. *See AmBrit,* 812 F.2d at 1536 (finding the foil wrapper of a Klondike bar to be suggestive of the "coldness of the product" and thus inherently distinctive based on the color and design of the wrapper). For example, the rounded front pouch with a centered logo placed on the front is unnecessary and simply included for aesthetic purposes, and the configuration of the pockets and materials, including mesh, is arbitrary and could be changed without changing the functionality. The TUSHBABY Trade Dress aligns with the aesthetic and distinctive branding of TUSHBABY Products.

### a.    Likelihood of Confusion

The second prong of the trade dress infringement analysis is whether Defendant's use of the TUSHBABY Trade Dress is likely to confuse customers about the source of the products. *Nane* Jan, 2014 WL 5177655, at *2 (citing Custom Mfg., 508 F.3d at 647-48). The Eleventh Circuit considers the following factors in determining whether a likelihood of confusion exists: (1) the strength of the trade dress, (2) the similarity of design, (3) the similarity between the products

offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, including whether the defendants hope to gain competitive advantage by associating his product with the plaintiff's established trade dress; and (7) actual confusion." *Tardieu Grp., Inc. v. MEC Apparel Grp., Inc.*, No. 09-20408-CIV, 2009 WL 10667537, at *3 (S.D. Fla. May 5, 2009) (citing *AmBrit*, 812 F.2d at 1538).

Because the inquiry is case-specific, the court is not required to consider every factor, but only those that are relevant to the case at hand. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc*., 716 F.2d 833, 840 & n.17 (11th Cir. 1983). The determination does not require that a majority of the factors favor confusion, if the overall circumstances tend to establish confusion. *Id*.; see also *AmBrit*, 812 F.2d at 1538 (finding that the "likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists. The appropriate weight to be given to each of these factors varies with the circumstances of the case.") In this case, the factors establish a substantial likelihood that Defendants' use of the TUSHBABY Trade Dress will confuse the consuming public about the source of the products.

### b.      Strength of Trade Dress

A proper analysis of the strength of trade dress should consider the type of trade dress (e.g., whether the elements are arbitrary, suggestive, etc.) and the extent of third-party use. *AmBrit,* 812 F.2d at 1539. As discussed above, the protectable elements of the TUSHBABY Trade Dress are nonfunctional and arbitrary-that is, not suggestive or descriptive of the product. In addition to being arbitrary with respect to the product, these elements are not used by anyone else. For example, no third-party baby carrier has the same overall configuration and color scheme as the TUSHBABY Hip Seat Baby Carrier.

TushBaby's longtime use, industry recognition, significant advertising expenditures, and

large volume of sales have further strengthened the trade dress. See *Home & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1260 (M.D. Fla. 2009) (*citing John H Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 n. 13 (11th Cir. 1983)). TushBaby has been using its trade dress for years, including operating its business under the name TushBaby since 2018. TushBaby has expended a considerable amount of money and effort in the past six years advertising its products in connection with the TUSHBABY Trade Dress. In that six-year span, TushBaby's efforts have resulted in extensive revenue from the global sales of TushBaby's trade dress-protected products. Additionally, TushBaby's extensive marketing and national media attention, including a feature on television show "Shark Tank" in 2019, receipt of the Mom's Choice Award in 2022, and national coverage resulting in over is 50 million views, has further reinforced the consuming public's association between TushBaby and its trade dress and has established significant goodwill and brand recognition with the consuming public.

This is substantiated when comparing to the utility patent registered to a non-party and introduced by Defendant ZOOYEE (the "Non-party Patent"). *TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 47-5. When comparing the Non-party Patent to the TUSHBABY Trade Dress, the distinctiveness of the TUSHBABY Trade Dress is made readily apparent.

The claims asserted in the Non-party Patent distinguishes the features of the TUSHBABY Trade Dress and accentuates the unique features of the TUSHBABY Hip Seat Carrier embodying TUSHBABY Trade Dress. The TUSHBABY Trade Dress, which includes the rounded pouch with a button-snap closure, is unique to the TUSHBABY Hip Seat Carrier. The Non-party Patent claims "a seating platform having a bucket shape" and features "hip seat pocket" which comprises a "torso support zipper covering flap with upper fasteners and lower fasteners." *See* U.S. Pat. No. 9,700, 152, col. 10 ll. 9-11, col. 12 ll. 5-7 (filed Mar. 31, 2016). The Non-party Patent, titled "Hip Seat

Device and System," does not feature a rounded pouch with a button-snap closure and exhibits completely different configurations from those featured in the TUSHBABY Trade Dress.

| Non-party Patent [Registration No US 9,700,152] | Tush Baby Trade Dress |
|---|---|
| | |
| **Non-party Product Embodying Non-party Patent** | **TUSHBABY Hip Seat Carrier Embodying TUSHBABY Trade Dress** |



Further, even if the utility patent shares similarities to the TUSHBABY Trade Dress and discloses a distinctive product design, it does not render features of that design to be ineligible for protection under the Lanham Act. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1362 (Fed. Cir. 1999) (finding no conflict between trade dress protection and patent protection); *see also Continental Lab. Products, Inc. v. Medax Intern.*, 114 F. Supp. 2d 992 (S.D. Cal. 2000) (finding the same).

Overall, the TUSHBABY Trade Dress is strong and, thus, this factor weighs strongly in favor of TushBaby.

### c.      <u>Similarity of Trade Dress</u>

In determining the similarity of the trade dress, the court compares the trade dress and considers "the overall impressions that the [trade dress] create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999) (internal citation omitted).

The defining characteristics of the TUSHBABY Hip Seat Baby Carrier are the TushBaby Logo centered on a rounded front pouch, black wraparound straps, a variety of neutral colors for the outer shell material, and the configuration of side zipper and mesh pockets. Defendant is advertising its product with trade dress that is ***identical***, or at least substantially similar, to the TUSHBABY Trade Dress.






*Exemplary Images of TUSHBABY Trade Dress*

*in Comparison to*







*Exemplary Images of Infringing Products Using TUSHBABY Trade Dress Sold on Defendant Internet Stores*

The overall impression created by Defendant's design, as advertised, is **identical**, or at the very least substantially similar, to the overall impression created by the TUSHBABY Trade Dress. Defendant misappropriates every nonfunctional detail of TushBaby's product in advertising its product. Because Defendants' trade dress is identical, if not nearly identical, this factor weighs heavily in favor of TushBaby.

d.    **Similarity of Products**

Defendants' advertised product is substantially similar, if not identical, to the TushBaby

Hip Seat Baby Carrier.

 



*Exemplary Image of Genuine TUSHBABY Product Covered by TUSHBABY Copyrights and*
*TUSHBABY Trade Dress in Comparison to*

24





*Exemplary Images of Infringing Products Sold on Defendant Internet Stores*

This similarity is further established when comparing the TUSHBABY Trade Dress to Defendant Fleerose's product which features the design patent registered to Defendant Fleerose on April 30, 2024 (the "Fleerose Patent"). *TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 44-1. The Fleerose Patent, which is invalid due to prior art, exhibits the similarity of the design of the Fleerose products to the TUSHBABY Hip Seat Carrier featuring the TUSHBABY Trade Dress.

The rounded pouch with button-snap closure and centered logo – distinctive to the TUSHBABY Trade Dress – is prominently featured in the Fleerose Patent and Fleerose product embodying the Fleerose Patent.



Fleerose asserts, in reference to the Fleerose Patent, that the "infringer…is Plaintiff," inferring that the TUSHBABY Hip Seat Carrier infringes the Fleerose Patent because of the shared features Fleerose Response in Opposition to Motion for TRO, *TushBaby Inc. v. The Corporations, et al.*, No. 24-cv-21136, Dkt. 39, 4. By Fleerose's own admission, it is clear that there are substantial similarities between the TUSHBABY Trade Dress and the designs featured in the infringing products. Further, due to these substantial similarities, Fleerose is not protected from trade dress infringement as the Fleerose Patent is invalid under 35 U.S.C. § 102. The Fleerose design was anticipated based on prior art given that the TUSHBABY Hip Seat Carrier featuring the TUSHBABY Trade Dress launched in 2018. Under Section 102, "[a] person shall be entitled to a patent unless the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102. A design patent is anticipated "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same*." Samsung Elec. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016). The Fleerose Design Patent application was filed on September 3, 2023, and was granted on April 30, 2024. *See* Dkt. 44-1. The TushBaby products were "in public use, on sale, or otherwise available to the public" (*see* 35 U.S.C. § 102) since at least 2018, years before the Fleerose Design Patent application was even filed. *See* Rant Decl., ¶¶ 6–8 ("TUSHBABY's premier product is the TUSHBABY Hip Seat Carrier ('the TUSHBABY Carrier'), launched in 2018, which bears unique and distinctive trade dress which consists of the overall design and configuration of the product . . . . Since at least 2018 the TUSHBABY Products have been the subject of substantial and continuous marketing and promotion, including by way of the TUSHBABY Trade Dress"). As a result, the Fleerose Design

Patent is invalid as anticipated by prior art and does not protect Fleerose from its admitted infringement of the TUSHBABY Trade Dress. *See Shenzhen Hengzechen Tech. Co. v. Individuals et al.*, No. 23-23380-CIV, 2023 WL 9022717, at *2 (S.D. Fla. Dec. 29, 2023) (assessing the validity of a patent at the preliminary injunction stage).

Because the products offered by TushBaby and Defendants are extremely similar, if not identical, this factor weighs heavily in favor of TushBaby.

### e.  <u>Similarity of the Sales and Advertising Methods</u>

A high degree of similarity between sales methods and use of the same advertising media increases the likelihood of confusion. *Suzuki Motor Co. v. Jiujiang Hison Motor Boat Mfg. Co.*, No. 1:12-cv-20626, 2012 WL 640700, at *3 (S.D. Fla. Feb. 27, 2012). Here, both TushBaby and Defendant use the Internet and Internet Marketplaces, such as Amazon.com, to market their products and use similar, if not identical, images to advertise their products. Defendants' listings include nearly identical information, description of product, and graphics to TushBaby's website and listings, along with use of the TUSHBABY Trade Dress.



*Exemplary Image of Infographic Used by Defendant Store to Advertise and Market its Infringing Product in Comparison to*



*Exemplary Image of Infographic Used by TushBaby featuring the TUSHBABY Trade Dress*

This factor also weighs strongly in TushBaby's favor. *See Id.* (this factor favored plaintiff when both the plaintiff and defendants used the Internet to market their products and defendants' Internet presence included use of plaintiff's intellectual property).

### f.    **Defendants' Intent**

The evidence of Defendant's intent to deceive customers is overwhelming. "If it can be shown that a defendant adopted a plaintiffs mark with the intention of deriving a benefit from the plaintiffs business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling,* 192 F.3d at 1340. Defendants' copying of Tushbaby's trade dress raises an inference that Defendant intended to benefit from Tushbaby's reputation to Tushbaby's detriment. *See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Fl,* 546 F. Supp. 987, 996 (S.D. Fla. 1982). The only possible conclusion is that Defendants have intentionally misappropriated the TUSHBABY Trade Dress to derive a benefit from TushBaby's reputation and

goodwill. This factor weighs strongly in TushBaby's favor.

As discussed above, Plaintiff's TUSHBABY Trade Dress is valid and protectable, and Plaintiff has established a likelihood of success on the merits of its trade dress infringement claim against Defendants--which, as discussed *supra* require a showing of likelihood of confusion—a likelihood of success on the merits for Plaintiff's false designation of origin claim has likewise been established.

### 3.  Plaintiff Is Likely to Succeed on Common Law Unfair Competition and Common Law Trade Dress Infringement Claims.

Whether a defendant's use of a plaintiff's trade dress creates a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.").

Additionally, the analysis of liability for Florida common law trade dress infringement is the same as the analysis of liability for trade dress infringement under the Lanham Act. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004); *see also Conair Corp. v. K & A Beauty, LLC*, No. 6:14-CV-920-CEM-TBS, 2014 WL 4385635, at *4 (M.D. Fla. Sept. 4, 2014) (upholding Florida courts recognition that a common-law unfair competition claim for trade dress infringement has the same elements as a federal trade dress infringement claim under § 43(a) of the Lanham Act.). As discussed above, Plaintiff has satisfied the elements of its trade dress infringement claim against Defendants, establishing that a likelihood of confusion exists. Therefore, Plaintiff is also likely to succeed on the merits of its corresponding common law claims.

Based on the above, TushBaby has shown a likelihood of success on the merits of its

copyright infringement, false designation of origin, and state claims.

### D.       The Balancing of Equities Tips in Plaintiff's Favor.

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

When balancing the hardship of both parties, courts will generally favor the plaintiff as "a company cannot build a business on infringements and then argue that enforcing the law will cripple that business." *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (*quoting CBS, Inc. v. Primetime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998)). As Defendants can still engage in non-infringing business activities, their hardship to comply with copyright law is not outweighed by the harm that Plaintiff will continue to incur if the injunction is not granted. See *Venus Fashion, Inc.* (citing Davidoff & Cie, S.A. v. PLD Int'l, 263 F.3d 1297, 1304 (11th Cir. 2001).) As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Equity requires that Defendants cease their unlawful conduct.

### E.       Issuance of the Injunction Is in the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent the public from being defrauded and misled by the use of infringing materials. *See Venus Fashion, Inc. v. Changchun Chengji Technology Co., Ltd.*, Case No.: 16-cv-61752 (S.D. Fla., Dimitrouleas J., Sept. 9, 2016), 2016 WL8678883.

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Infringing Products as genuine. The public has an

interest in not being misled as to the origin, source, or sponsorship of protected products. *See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants. Unless Defendants' unauthorized use of the TUSHBABY Copyrights and TUSHBABY Trade Dress is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.   THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. Furthermore, in addition to this Court's inherent authority to issue injunctive relief, the Copyright Act authorizes courts to issue injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright ...." 17 U.S.C. § 502. *See also* 17 U.S.C. § 503 (providing for injunctive relief for copyright infringement; enjoining any use or

exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). The facts in this case warrant such relief.

"Once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a presumption of irreparable harm." *Commodores Entm 't,* 2014 WL 5285980, at *4 (citing *Tally-Ho,* 889 F.2d at 1029). Even without a presumption, the Eleventh Circuit recognizes that "[a] strong showing of the likelihood of confusion could by itself show a serious threat of irreparable harm." *King Ranch, Inc.* v. *King Ranch Contractors, LLC,* No. 6:12-cv-597-Orl-37KRS, 2013 WL 2371246, at *12 (citing *McDonald's Corp.* v. *Robertson,* 147 F.3d 1301, 1310(11thCir.1998).

TushBaby's trade dress and copyright registrations are critical to its business. TushBaby has expended significant resources building name recognition and public association with its trade dress and copyrights. As a result, TushBaby's copyright registrations and trade dress have become extremely valuable to TushBaby as identifiers of its goods and of the substantial goodwill that TushBaby has earned over the past six years in the market.

Moreover, Defendants offer low-quality knock-off products for a fraction of the cost of a genuine TushBaby Hip Seat Baby Carrier. (Rant Decl., ¶11). If Defendants' infringement continues, Defendants' cheap knock-offs will tarnish TushBaby's reputation and result in severe price erosion. Most significantly, Defendants are likely selling unregistered and unregulated products that do not pass the same global verification tests and federal safety standards that TUSHBABY Products are known for. (Rant Decl., ¶¶ 6, 31). Defendants' products can pose safety risks to consumers and young children. Because of the high likelihood of confusion, TushBaby faces irreparable harm because it cannot control the quality of Defendants' goods.

Unless enjoined by this Court, Defendants' trade dress and copyright infringement will

cause TushBaby to be irreparably harmed.

**V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF**

Because of the strong evidence of counterfeiting and infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a preliminary injunction is in the Court's sound discretion. Fed. R. Civ. P. 65(c).

**VI.      CONCLUSION**

Plaintiff respectfully requests this Court enter a Preliminary Injunction. Due to the ongoing infringement of Plaintiff's copyright registrations and trade dress, in the event the application is granted, Plaintiff also respectfully requests the Court provide a copy of the preliminary injunction order to Plaintiff's counsel via e-mail at mlouis@bsfllp.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants proper notice of the order and any subsequent hearing date.

Dated:      May 13, 2024                    Respectfully submitted,

                                          **BOIES SCHILLER FLEXNER LLP**

                                          */s/ Marshall Dore Louis*
                                          Marshall Dore Louis (FL Bar No. 512680)
                                          100 SE 2nd Street, Suite 2800
                                          Miami, FL 33131
                                          Telephone: (305) 539-8400
                                          E-mail: mlouis@bsfllp.com

                                          *Attorney for Plaintiff, Tushbaby Inc.*