UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| TUSHBABY, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COZYONE SHOP,<br><br>　　　　Defendant.<br><hr>TUSHBABY, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MOMCOZY MATERNITY ESSENTIAL,<br><br>　　　　Defendant. | **Lead Case No. 1:24-cv-20941**<br><br>**This document also relates to:**<br><br>**Case No. 1:24-cv-23231**<br><br>**Case No. 1:24-cv-23233** |

### DECLARATION OF TAMMY RANT

I, Tamara Rant, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I make this declaration in support of Plaintiff's Application for Entry of a Temporary Restraining Order, including temporary restraints and other relief.

3. I am the founder and CEO of TUSHBABY, Inc. ("TUSHBABY") and am knowledgeable about or have access to business records concerning key aspects of the brand protection operation of TUSHBABY, including, but not limited to intellectual property, sales, on-

line sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge unless stated otherwise.

4. TUSHBABY is a leading infant carrier manufacturer and distributor, and has earned an international reputation for quality, reliability, and value. TUSHBABY is the official source of TUSHBABY products in the United States.

5. TUSHBABY's premier product is the TUSHBABY Hip Seat Carrier ("the TUSHBABY Carrier"), launched in 2018, which bears unique and distinctive trade dress which consists of the overall design and configuration of the product (the "TUSHBABY Trade Dress"). TUSHBABY has since developed more innovative, distinctive, and ground-breaking products ("TUSHBABY Products"). TUSHBABY Products are designed with high quality materials and a range of color options that lend to their distinctiveness. TUSHBABY Products comply with all of the U.S. Consumer Product Safety Commission's federal product safety regulations and are approved and verified through Société Générale de Surveillance ("SGS") testing to comply with global safety standards.

6. TUSHBABY is the registered owner of the TUSHBABY Trade Dress, covered by U.S. Patent and Trademark Office Registration No. 7,489,071, as well as various copyrights ("TUSHBABY Copyrights"), covered at least by U.S. Copyright Office Registration Nos. VA 2-360-715, VA 2-360-714, VA 2-360-713, VAu 1-511-350, VAu 1-511-372, and VA 2-395-564.

7. Since at least 2018, the TUSHBABY Products have been the subject of substantial and continuous marketing and promotion by TUSHBABY, including by way of the TUSHBABY Trade Dress and TUSHBABY Copyrights. TUSHBABY has and continues to widely market and promote TUSHBABY Products in the industry and to consumers globally. TUSHBABY'S promotional efforts include — by way of example but not limitation — a feature on television show

"Shark Tank," substantial print media, the TUSHBABY Products' website and social media sites, and point of sale materials, all of which featuring at least a portion of the TUSHBABY Trade Dress.

8. TUSHBABY has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TUSHBABY Trade Dress. The TUSHBABY Carrier received the Mom's Choice Award in 2022 and TUSHBABY has received praise and recognition from media outlets including Buzzfeed, Insider, and Forbes Magazine. As a result, products bearing the TUSHBABY Trade Dress are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from TUSHBABY.

9. The success of TUSHBABY Products has resulted in significant infringement of the intellectual property rights subsisting in and associated with those products, including the TUSHBABY Trade Dress and TUSHBABY Copyrights.

10. Consequently, TUSHBABY has implemented an anti-infringement program and is investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps as part of that program. TUSHBABY has also conducted investigation efforts through its counsel, ESCA Legal, as detailed further in the declaration of Adrian Punderson. TUSHBABY has identified two brand names active on Amazon offering for sale products that infringe on the TUSHBABY Trade Dress: CozyOne Shop ("CozyOne") and Momcozy Maternity Essential ("Momcozy").

11. CozyOne and Momcozy sell products that appear to be genuine TUSHBABY products, but which are actually inferior and unauthorized imitations offered at significantly lower prices—in some cases, at prices equal to around half of the market rate for a genuine TUSHBABY Carrier (the "Infringing Products"). Indeed, the Infringing Products are marketed by reference to and/or embody works that are strikingly similar, or at the very least substantially similar, to the TUSHBABY Trade Dress and TUSHBABY Copyrights.

12. Through TUSHBABY's investigation, we conducted test purchases of the Infringing Products. For example, in test purchases of Infringing Products sold by Momcozy, we confirmed that the Infringing Products ship to consumers in Florida. We also learned that the Infringing Products sold by Momcozy are manufactured by Hong Kong Lute Technology Co., Ltd., a Hong Kong-based entity, and imported by Pacific Fortune Management Inc., a California-based registered corporation.

13. Despite TUSHBABY's enforcement efforts online, Defendants have persisted in advertising, distributing, offering for sale, and selling Infringing Products.

14. True and correct copies of representative screenshot printouts from CozyOne and Momcozy are collectively attached as **Exhibit 1**.

15. Upon information and belief, Defendants design and advertise the Infringing Products so that they appear to unknowing consumers to be genuine TUSHBABY Products. The Infringing Products appear strikingly similar to genuine TUSHBABY Products.

16. The Infringing Products include design elements that make it very difficult for consumers to distinguish such Infringing Products from genuine TUSHBABY Products. Such design elements include a logo centered on a rounded front pouch with wraparound black straps, side zippered pockets, and mesh side pockets.

17. TUSHBABY has not licensed or authorized Defendants to use the TUSHBABY Trade Dress or TUSHBABY Copyrights, and none of the Defendants are authorized manufacturers, distributors, or retailers of genuine TUSHBABY products.

18. Upon information and belief, Defendants go to great lengths to conceal their involvement in the advertisement, distribution, and sale of Infringing Products. For example, both Defendants list fictitious business names on their Amazon seller pages—CozyOne lists the name "daliankaoliteshangwuxinxiyouxiangongsi," while Momcozy lists the name

"shenzhenshisichuangtianchengdianzishangwuyouxiangongsi." Upon information and belief, both Defendants registered their businesses in the People's Republic of China in order to evade Plaintiff's enforcement efforts and the reach of U.S. jurisdiction. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their online intellectual property infringement operation, and to avoid being shut down.

19. In addition, Defendants in this case and defendants in other similar cases against intellectual property infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new entities once they receive notice of a lawsuit. Infringers like Defendants will also manufacture the same Infringing Products with new brand name labels in order to avoid detection. Here, CozyOne advertises Infringing Products under brand names "CozyOne Store" and "pandarling."

20. Based on my experience in investigating products that infringe intellectual property rights, including the instant investigation, infringers such as Defendants typically maintain off-shore bank accounts and regularly move funds to off-shore bank accounts outside the jurisdiction of this Court.

21. Monetary damages alone cannot adequately compensate TUSHBABY for ongoing infringement because monetary damages fail to address the loss of control of and damage to TUSHBABY'S reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to TUSHBABY's reputation and goodwill by acts of infringement.

22. TUSHBABY'S goodwill and reputation are irreparably damaged when the TUSHBABY Trade Dress and TUSHBABY Copyrights are used with respect to goods not

authorized, produced, or manufactured by TUSHBABY. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to TUSHBABY's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

23. TUSHBABY is further irreparably harmed by the unauthorized use of the TUSHBABY Trade Dress because infringers take away TUSHBABY's ability to control the nature and quality of products marketed by reference to and/or embodying the infringing and unauthorized versions of the TUSHBABY Trade Dress. TUSHBABY's products, including the TUSHBABY Hip Seat Carrier, comply with all mandatory federal product safety regulations set forth by the U.S. Consumer Product Safety Commission and are approved in accordance with global safety standards and verified through SGS testing. Loss of quality control over goods marketed by reference to and/or embodying the TUSHBABY Trade Dress and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

24. The sale of Infringing Products marketed by reference to and/or embodying the TUSHBABY Trade Dress and TUSHBABY Copyrights causes consumer confusion, which weakens TUSHBABY's brand recognition and reputation. Consumers who mistakenly believe that the Infringing Products they have purchased originated from TUSHBABY will come to believe that TUSHBABY offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine TUSHBABY products, resulting in a loss or undermining of TUSHBABY's reputation and goodwill.

25. TUSHBABY is further irreparably damaged due to a loss of exclusivity. The TUSHBABY Products are meant to be exclusive. TUSHBABY's extensive marketing and distribution of TUSHBABY Products as part of its various marketing activities are aimed at growing

and sustaining sales of TUSHBABY Products. The TUSHBABY Trade Dress signifies to consumers that the TUSHBABY Products originate from Plaintiff and are manufactured to high quality standards. When intellectual property infringers use any of the TUSHBABY Trade Dress and TUSHBABY Copyrights without TUSHBABY's authorization, the exclusivity of the TUSHBABY Products, as well as TUSHBABY's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

26. TUSHBABY will suffer immediate and irreparable injury, loss, or damage if a Temporary Restraining Order is not issued.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Executed on September 26, 2024, in Walnut Creek, California.

_____
Tamara Rant