UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-20941-LEIBOWITZ/GOODMAN

**TUSHBABY, INC.**,

    *Plaintiff*,

v.

**COZYONE SHOP**,

    *Defendant.*

---

**TUSHBABY, INC.**,

    *Plaintiff*,

v.

**MOMCOZY MATERNITY ESSENTIAL**,

    *Defendant.*

**ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY
OF TEMPORARY RESTRAINING ORDER PREVENTING ASSET TRANSFER,
EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE FOR
<u>PRELIMINARY INJUNCTION</u>**

    **THIS CAUSE** comes before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order Preventing Asset Transfer, Expedited Discovery, and Order to Show Cause for Preliminary Injunction (the "Application) [ECF No. 51], filed on September 27, 2024. The Court has carefully reviewed the Application and the record and is otherwise fully advised in the premises.

    By the instant Application, Plaintiff Tushbaby, Inc. ("Plaintiff"), moves *ex parte*, for entry of a temporary restraining order against Defendants CozyOne Shop and Momcozy Maternity Essential

(collectively "Defendants"), and an entry of an order restraining the financial accounts used by Defendants, pursuant to 15 U.S.C. § 1125, 17 U.S.C. § 502, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

For the reasons set forth herein, Plaintiff's *Ex Parte* Application for Temporary Restraining Order [**ECF No. 51**] is **GRANTED**.

## I.     Factual Background

Plaintiff is the owner of the trade dress covered by U.S. Patent and Trademark Office Registration No. 7,489,071 ("TUSHBABY Trade Dress" or "Plaintiff's Trade Dress") and copyright registrations covered by U.S. Copyright Office Registration Nos. VA 2-360-715, VA 2-360-714, VA 2- 360-713, VAu 1-511-350, VAu 1-511-372, and VA 2-395-564 (collectively, the "TUSHBABY Copyrights" or "Plaintiff's Copyrights"), which are valid, and in full force and effect.  *See* Declaration of Tamara Rant ("Rant Decl.") ¶ 6.

Defendants, through various Amazon storefronts operating under Amazon Seller Identifications AY259EXNHX4TP and A3IKW5RKYL1IYC (the "Seller IDs"), respectively, have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be, infringements, reproductions, or colorable imitations of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress.  *See* Rant Decl. ¶¶ 10–17.

Defendants are not now, nor have they ever been, authorized or licenses to use or reproduce TUSHBABY Copyrights and/or TUSHBABY Trade Dress.  *See* Rant Decl. ¶ 17.

Plaintiff investigated the promotion and sale of products bearing infringements of Plaintiff's Trade Dress and Copyrights by Defendants.  *See* Rant Decl. ¶¶ 10–20.  Plaintiff accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of products bearing infringements of the TUSHBABY Copyrights and/or TUSHBABY Trade Dress at issue in this action from each of the Seller IDs, and completed a checkout page

requesting each product to be shipped to an address in the Southern District of Florida. *See* Rant Decl. ¶¶ 12. Plaintiff conducted a review and visually inspected the item, for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs, and determined the products were non-genuine, unauthorized versions of Plaintiff's products. *See* Rant Decl. at ¶¶ 15–17.

## II.  Legal Standard

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## III.  Conclusions of Law

The declarations Plaintiff submitted in support of its *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A.  Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods

3

bearing and/or using infringements, reproductions, or colorable imitations of TUSHBABY Copyrights and/or TUSHBABY Trade Dress, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's respective products that bear and/or use copies of TUSHBABY Copyrights and/or TUSHBABY Trade Dress.

B. Because of the infringement of TUSHBABY Copyrights and/or TUSHBABY Trade Dress, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

1. Defendants own or control e-commerce storefronts on Amazon.com operating under their respective Seller IDs which advertise, promote, offer for sale, and sell products bearing and/or using infringing copyrights and/or trade dress in violation of Plaintiff's respective rights;

2. There is good cause to believe that more infringing products bearing and/or using Plaintiff's Copyrights and/or Trade Dress will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

3. There is good cause to believe that if Plaintiff proceeds on notice to Defendants on this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify e-commerce storefronts and private messaging account data and content, change payment accounts, redirect consumer traffic to other seller identification names and private messaging accounts, and transfer assets and ownership of the seller identification names, thereby thwarting Plaintiffs' ability to obtain meaningful relief.

  C. The balance of potential harm to Defendants in restraining their trade in infringing goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief not issued.

  D. The public interest favors issuance of the temporary restraining order to protect Plaintiff's Copyright and Trade Dress interests and protects the public from being defrauded by the palming off of infringing goods as Plaintiff's genuine goods.

  E. Under 15 U.S. Code § 1125, 15 U.S.C. § 1117(a) and 17 U.S.C. §504(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using infringements of Plaintiff's Copyrights and/or Trade Dress. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

  F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

  G. In light of the inherently deceptive nature of the infringing business, and the likelihood that Defendants have violated federal copyright, trademark, and unfair competition laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

   Upon review of Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, it is hereby **ORDERED** that pursuant to 15 U.S.C. § 1116,

Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's inherent authority, Plaintiff's Application for Temporary Restraining Order [**ECF No. 51**] is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

   a. From directly or indirectly manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products which infringe upon the TUSHBABY Trade Dress;

   b. From directly or indirectly infringing the TUSHBABY Copyrights;

   c. From enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others to directly or indirectly infringe the TUSHBABY Trade Dress or TUSHBABY Copyrights; and

   d. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing Plaintiff's Copyrights and/or Trade Dress; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiff's Copyrights and/or Trade Dress; or (iii) any money, assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant. This includes but is not limited to: (a) any and all of Defendants' accounts with Amazon.com or any other online marketplace platform; and (b) any financial institution accounts linked to Defendants' accounts or that otherwise have received payments for purchases from Defendants' Amazon.com storefronts, including those connected to the Seller IDs.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress on or in connection with all Internet based e-commerce storefronts owned and operated, or controlled by them, including the Internet based e-commerce storefronts operating under the Seller IDs.

(3)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiff's Copyrights and/or Trade Dress within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores and Internet websites registered, owned, or operated by each Defendant, including the Internet based e-commerce storefronts operating under the Seller IDs.

(4)     Each Defendant shall not transfer ownership of Seller IDs during the pendency of this action, or until further order of the Court.

(5)     Each Defendant shall preserve copies of all computer files relating to the use of any of the Internet based e-commerce storefronts operating under their Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce storefronts and Internet websites operating under their Seller IDs that may have been deleted before the entry of this Order.

(6)     Within five (5) days of receipt of notice of this Order, Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms that are providing services for any of the Defendants, including but not limited to Amazon.com, Amazon Pay, PayPal, Stripe, Square, AliExpress, TikTok Shop, Walmart, Temu, and/or Shein, and their related companies and affiliates (together, the "Third Party Providers"), shall:

    a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account

      for the trust of the Court. Such restraining of funds and disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

   b. Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Amazon.com storefronts operating under the Seller IDs AY259EXNHX4TP and A3IKW5RKYL1IYC, as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants, including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related; and (iv) information concerning sales of any infringing products made by Defendants.

(7) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(8) The Clerk of the Court is directed to issue a single original summons in the name of "CozyOne Shop and Momcozy Maternity Essential" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(9) This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, private messaging accounts, domain names, websites, or financial accounts which are being used by Defendants for the purpose of infringing Plaintiff's Copyrights and/or Trade Dress at issue in this action and/or unfairly competing with Plaintiff.

(10) This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to

by the parties.

(11)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(12)    After Plaintiff's counsel has received confirmation from the Third Party Providers regarding the funds restrained as directed herein and expedited discovery from the same, Plaintiff shall serve a copy of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Amazon.com storefronts operating under the respective Seller IDs, or by providing a copy of this Order by e-mail to the marketplace platform or image hosting website, for each of the Seller IDs so that they, in turn, notify each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the Plaintiff's Serving Notice Website and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants regularly updating Plaintiff's Serving Notice Website or by other means reasonably calculated to give notice which is permitted by the Court.

(13)    A **HEARING** is set before this Court on **Friday, October 18, 2024, at 9:00 A.M.**, in Courtroom 202A at the U.S. Courthouse, 299 E. Broward Boulevard, Fort Lauderdale, Florida, at which time Defendants and/or any other affected persons may challenge the appropriateness of this

Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. Plaintiff shall email a proposed order to leibowitz@flsd.uscourts.gov in Word format **no later than Tuesday, October 15, 2024**.

(14)   Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel **on or before October 14, 2024**. Plaintiff shall file any Reply Memorandum **on or before October 17, 2024**. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1125, 17 U.S.C. §502(a), Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

**DONE AND ORDERED** in the Southern District of Florida on October 8, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:   counsel of record