UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TUSHBABY, INC., | Case No. 1:24-cv-23233-LEIBOWITZ |
| Plaintiff/Counter-Defendant, | Consolidated Under Lead Case No. 1:24-cv-20941 |
| v. | |
| MOMCOZY MATERNITY ESSENTIALS, | |
| Defendant/Counterclaimant. | |

**TUSHBABY'S MOTION TO DISMISS MOMCOZY'S COUNTERCLAIMS
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6), Plaintiff/Counter-Defendant Tushbaby, Inc. moves to dismiss Defendant/Counterclaimant Momcozy Maternity Essentials' Counterclaims. [ECF No. 77 at 7–18] (the "Counterclaims"). For the reasons stated in the incorporated memorandum of law, Tushbaby requests that the Court dismiss Momcozy's Counterclaims in their entirety.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Tushbaby is the owner and registrant of U.S. Registration No. 7,489,071, its distinctive trade dress, which was registered with the U.S. Patent and Trademark Office ("PTO") in Class 18 for "Pouch baby carriers; baby carriers worn on the body; baby carriers worn on the hip with storage for carrying babies' and parents' accessories" on August 27, 2024 (the "Tushbaby Trade Dress"). Counterclaims ¶¶ 1, 11. According to the trademark registration, the mark consists of "a three-dimensional configuration of a pocket and a flap." *Id.* at ¶ 11. As explained below, however, consideration of the trade dress encompasses more than just the pocket and flap for which Tushbaby obtained a trademark registration. Tushbaby is also the owner of several registered

works subject to copyright protection. *See id.* at ¶¶ 1, 16.

Tushbaby originally filed this action on March 11, 2024 against Momcozy and other e-commerce merchants, who are advertising and selling infringing knock-offs of Tushbaby's flagship baby carrier, utilizing the Tushbaby Trade Dress and substantially similar marketing to capitalize on Tushbaby's goodwill. [ECF No. 1 ¶¶ 12–30]. After the Court severed the case, Tushbaby filed an individual case against Momcozy, and, on evidence, obtained a TRO against it on October 8, 2024. [ECF No. 59]. Momcozy thereafter moved to dissolve the TRO, and, based on representations by Momcozy's counsel that it had a good-faith interest in settling this case quickly and amicably, Tushbaby did not oppose Momcozy's request and withdrew its request for a preliminary injunction. [ECF No. 66]. Contrary to those representations, Momcozy has wholly ignored Tushbaby's offers to settle, refuses to curb its infringing conduct[1], and has now taken the aggressive tactic of filing Counterclaims, which are objectively meritless, and, as explained below, inadequately pled.

In particular, Momcozy seeks declaratory relief and damages for unfair competition. *See generally* Counterclaims. Specifically, it seeks a declaration that it has not infringed the Tushbaby Trade Dress (Count I), a declaration that the Tushbaby Trade Dress is invalid and should be cancelled by the PTO (Count II), relief under section 1125 of the Lanham Act for damages (Count III), and a declaration of noninfringement as to Tushbaby's copyrighted works (Count IV). *See id.* Notably omitted from Momcozy's pleadings is the fact that, less than a week prior, a preliminary injunction was entered in Tushbaby's favor against several defendants in the Southern District of New York who are represented by the same counsel. *Tushbaby, Inc. v. Jinjang Kangbersi Trade Co.*, 2024 WL 4627452 (S.D.N.Y. Oct. 30, 2024), *reconsideration denied*, 2024 WL 4769686

---

[1] Accordingly, Tushbaby is re-evaluating the need for a preliminary injunction.

(S.D.N.Y. Nov. 13, 2024). In a lengthy opinion, the court rejected the exact same challenges that are the subject of Momcozy's Counterclaims, finding that Tushbaby was likely to succeed on the merits, and furthermore noting that the record was "replete" with evidence of defendants' bad faith. 2024 WL 4627452, at *7.

Notwithstanding the above, even on the pleadings alone, the Court should dismiss the Counterclaims. First, they represent an impermissible shotgun pleading. Second, Momcozy fails to meet its burden to plausibly allege each individual claim for Counts I-III, and therefore those counts should be dismissed on that basis as well.

## II.     MEMORANDUM OF LAW

### A. Legal Standard

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007). The Eleventh Circuit applies a "two-pronged approach" in evaluating motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Dismissal is appropriate where, accepting the pleaded facts as true, there is a dispositive legal issue that precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). On a Rule 12(b) motion, courts can properly consider the complaint, documents attached to it, documents that central to the

plaintiff's claim where "the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005).

### B. Request for Judicial Notice

As a preliminary matter, Tushbaby requests that the Court take judicial notice of the Tushbaby Trade Dress application and supporting materials submitted to the U.S. Patent and Trademark Office ("PTO") (the "Trade Dress Application").[2] Momcozy's pleading seeks to cancel the Tushbaby Trade Dress registration by making repeated reference to alleged "misrepresentations" to the PTO (made on "information and belief"). *See* Counterclaims ¶¶ 40, 46, 55. In doing so, Momcozy puts Tushbaby's representations to the PTO—which are set forth in the Trade Dress Application—at front and center. Additionally, the Trade Dress Application is "part of the public record'" which courts can consider to establish what those documents contain without converting a Rule 12 motion to a motion for summary judgment. *See Patagonia, Inc. v. Worn Out, LLC*, 2023 WL 3172530, at *5 (S.D. Fla. May 1, 2023) (collecting cases); *see also Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.,* 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017) (taking judicial notice of USPTO record).

As explained below, Momcozy challenges the validity of the Tushbaby Trade Dress by, among other things, characterizing what Tushbaby submitted to the PTO in support of its application. *See* Counterclaims ¶¶ 40–41. It is a matter of "fairness" that the Court consider such documents under Rule 12 as Momcozy "fail[ed] to attach that document to the complaint." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999). When considering the documents submitted to the PTO, which are central to the claims, the Court is not bound by Momcozy's

---

[2] The Trade Dress Application is attached as Exhibit A to the Declaration of Leo M. Lichtman submitted herewith ("Lichtman Decl."). It is also publicly available on the PTO online database at the following URL: https://tsdr.uspto.gov/documentviewer?caseId=sn98310767&docId=APP20231213153227&linkId=20#docIndex=19&page=1.

4

characterizations (which characterizations contradict the documents). *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (exhibit controls over allegations characterizing it).

### C. The Counterclaims Should be Dismissed as an Impermissible Shotgun Pleading

As a threshold matter, Momcozy's Counterclaims violate the cardinal rules of pleading. In paragraphs 20, 25, and 53, and 60, Momcozy incorporates each and every prior paragraph into its successive counts, rendering it practically impossible for Tushbaby to adequately respond to each count. *See Finch v. Carnival Corp.*, 2023 WL 7299780, at *4 (S.D. Fla. Nov. 6, 2023) (shotgun pleading fail "to give the [counterparty] adequate notice of the claims against them and the grounds upon which each claim rests," quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). A pleading "through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading…." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n. 39 (11th Cir. 2014); *see also Weiland*, 792 F.3d at 1321 n. 11 (collecting cases for this proposition). The Eleventh Circuit has "condemned" such incorporation because it invariably "lead[s] to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Weiland*, 792 F.3d at 1324 (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)).

Momcozy has committed this "condemned" pleading error. By way of example, Count IV asserts a declaration of noninfringement for copyright claims, yet it incorporates every prior allegation and count, *see* Counterclaim ¶ 60, failing to specify precisely which of the preceding fifty-nine paragraphs apply, and incorporating needless paragraphs and allegations on trademark use. Momcozy's Counterclaims can, and should, be entirely dismissed for this reason alone. Additionally, as discussed below, Counts I-III fail to state a claim.

### D. Count I Fails to State a Claim for Non-Infringement

Under Count I, *see* Counterclaims ¶¶ 20–24, Momcozy alleges that there cannot be likelihood of confusion between its product design and the Tushbaby Trade Dress. But even taken as true, the allegations simply do not plausibly lead to a finding of non-infringement.

The crux of Momcozy's Count I is that its product does not infringe because of some minor alleged visual differences, seemingly asking the court to juxtapose the Tushbaby Trade Dress registration drawing with a screenshot of its own product. *Id.* at ¶¶ 11, 23. But even taken as true, such allegations are not sufficient to support a finding of non-infringement. This is because trade dress infringement is not compared or evaluated simply by looking at two designs side-by-side and asking the factfinder to spot the differences. On the contrary, the Eleventh Circuit employs a multi-factor test of which the similarity of the marks is merely one factor. *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (setting forth seven-factor test for trade dress infringement); *see also Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1289 (11th Cir. 2018).[3]

And on this factor—the sole factor implicated by Momcozy's pleading—the comparison is flawed because courts "must examine how the marks are encountered in the marketplace." *Guantanamera Cigars Co. v. SMCI Holding, Inc.*, 2022 WL 1288742, at *7 (S.D. Fla. Apr. 29, 2022) (citing *Zaletel v. Prisma Labs, Inc.*, 2017 WL 877302, at *4 (D. Del. Mar. 6, 2017) ("Because the test is likelihood of confusion by consumers in the marketplace, the degree of similarity of the marks is assessed by looking at the marks as encountered by consumers in the marketplace.")); *You Fit, Inc. v. Pleasanton Fitness*, LLC, 2013 WL 521784, at *5 (M.D. Fla. Feb.

---

[3] The other factors are: "the strength of plaintiff's trade dress," "the similarity of the products themselves," "the similarity of the parties' trade channels and customers," "the similarity of advertising media used by the parties," "the defendant's intent," and "the existence and extent of actual confusion." *Yellowfin*, 898 F.3d at 1289. The factors are analyzed "holistically." *Id.*

6

11, 2013) ("In deciding similarity, the court must 'not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace,'" quoting *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 962 (2d Cir. 1996)).

Indeed, confusion in the marketplace takes various forms. *See, e.g.*, *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007) (recognizing "likelihood of confusion in the post-sale context" as a viable basis for an action); *Montgomery v. Noga*, 168 F.3d 1282, 1301 n.32 (11th Cir. 1999) ("[P]resale confusion of actual purchasers is not the only type of confusion actionable under the Lanham Act."); *see also USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1265 (S.D. Fla. 2016) ("[P]oint-of-sale confusion is not the only confusion which the Lanham Act seeks to prevent; other forms of confusion, including reverse confusion, initial interest confusion, and post-sale confusion may also be actionable," quoting *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 n.4 (2d Cir. 2005)). For example, initial interest confusion "occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Hydentra HLP Int. Ltd. v. Luchian*, 2016 WL 5951808, at *17 (S.D. Fla. June 2, 2016) (quoting *USA Nutraceuticals Grp., Inc. v. BPO Sports, LLC*, 2016 WL 695596 (S.D. Fla. 2016)).[4] Post-sale confusion, on the other hand, occurs "when the actual purchaser knows that the item originates with the infringer rather than the owner, but subsequent observers likely will confuse the source of the goods due to the confusing similarities." *Sara Lee Corp. v. Am. Leather Prods.*, 1998 WL 433764, at *17 (N.D. Ill. July 27, 1998) (citing *Academy of Mot. Pic. Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991)); MCCARTHY

---

[4] Courts within the Eleventh Circuit appear split on whether this type of confusion is actionable. *Hydentra*, 2016 WL 5951808, at *17 ("The more correct statement is that the Eleventh Circuit has not yet had the opportunity to determine whether 'initial interest confusion' is actionable.").

ON TRADEMARKS, § 23.01[4][c] (noting that post-sale confusion is actionable because a senior user is damaged by consumers acquiring the prestige value of the senior user's product by "buying the copier's cheap imitation"); *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872–73 (2d Cir.1986) (post-sale confusion actionable where consumers would see infringing jeans on passers-by outside of the retail store and without the labels).[5] Because Momcozy does not identify the relevant marketplaces, or even allege how any other factor favors it, it fails to state a claim.

### E. Count II Fails to State a Claim for Declaration of Invalidity and Cancellation[6]

Under Count II, *see* Counterclaims ¶¶ 25–52, Momcozy alleges that the Tushbaby Trade Dress is invalid and should be cancelled on three bases: functionality, lack of secondary meaning, and fraud.[7] "In order to successfully prosecute a claim for trademark cancellation, the challenger of a federally registered mark must demonstrate '(1) [t]hat it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration.'" *Royal Palm*, 950 F.3d at 782 (quoting *Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). This count should be dismissed because Momcozy offers little besides bare conclusions and allegations which, if not otherwise contradicted on their face by the Trade Dress Application, fail to plausibly rebut the presumption of validity to which the Tushbaby Trade Dress is entitled. *See Pinnacle Advert. & Mktg. Grp., Inc.*

---

[5] Tellingly, Momcozy does not (because it cannot) allege to be the senior user.

[6] While not specified, Momcozy seemingly invokes 15 U.S.C. § 1119, which grants courts the "authority to cancel trademarks that the PTO has registered." *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 782 (11th Cir. 2020).

[7] Momcozy does not use the word "fraud" but characterizes its third basis for cancellation as "misrepresentations" to the PTO. *See* Counterclaims ¶ 46. Fraud is only sustained when one "knowingly makes false, material representations of fact in connection with an application for a registered mark." *Storm Team Constr., Inc. v. Stormz USA, LLC*, 2023 WL 7046169, at *4 (M.D. Fla. Oct. 26, 2023) (quoting *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008)).

8

*v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1004 (11th Cir. 2021) ("When a mark has been registered with the PTO, there is a 'rebuttable presumption that the marks are protectable'"; "challenger seeking cancellation of the registration must 'overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark is not distinctive.'") (citations omitted). Each basis is addressed in turn.

### **Functionality**

The critical question courts ask when considering whether a design is functional and thus ineligible for trademark protection is whether the design "is *essential* to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10, (1982) (emphasis added); *see also Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1203 (11th Cir. 2004). The ultimate determination of functionality, under the so-called "traditional test" must be made on the overall impression of the trade dress. *See Dippin' Dots*, 369 F.3d at 1203; *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). To make such assessment of whether feature affects the cost or quality of the article under the Eleventh Circuit's "traditional test," courts look to "whether competitors would either incur additional costs or sacrifice product quality by avoiding the trade dress." *Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC*, 631 F. Supp. 3d 1203, 1217 (M.D. Fla. 2022) (collecting cases). The second test is "commonly called the competitive necessity test," under which "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" *Dippin' Dots, Inc.*, 369 F.3d at 1203 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001)).

After "[e]liminat[ing] any allegations in the complaint that are merely legal conclusions out the bare conclusions," *Am. Dental Ass'n*, 605 F.3d at 1290, Momcozy's functionality allegation

essentially boils down to this: the Tushbaby Trade Dress "provide[s] additional storage space"; its "shape, size and thickness are more or less shaped in order to be suitable for front design of the product"; its "positioning and size of the baby hip seat carrier product is within narrow parameters for compatibility with the product to provide maximum storage space"; the Tushbaby Trade Dress "consists of [unidentified] patentable features"; and "upon information and belief," Tushbaby's marketing materials "emphasize the utilitarian benefits of pocket." Counterclaims ¶¶ 31–33. But this does not overcome the presumption of nonfunctionality.

 First, even taken as true, Momcozy's allegations still fail to explain why the Tushbaby Trade Dress is essential to the function of a baby carrier—*to carry a baby*. To the contrary, Momcozy's allegations, at most, establish that the Tushbaby Trade Dress is useful. But that is not the proper inquiry. *See, e.g., Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 492 (7th Cir. 2019) ("[Defendant] consistently elides the distinction between a product's 'function' in the everyday meaning of the term and 'functional' as a term of art used in trade dress law."). Further, Momcozy's allegations attack the Tushbaby hip carrier's pocket as functional, but simply because "individual elements ... are functional does not, however, render the ... whole unprotectible." *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). In *AmBrit*, which is binding on this Court, the Eleventh Circuit affirmed a lower court finding that a foil wrapper design for an ice cream bar was primarily nonfunctional. The wrapper's "square size, bright coloring, pebbled texture, [and] polar bear and sunburst images" rendered the wrapper nonfunctional because while "[t]he actual wrapper may [have been] functional, ... its appearance [was] not." *Id.* at 1538. Similarly, in *John H. Harland*, the Eleventh Circuit affirmed a jury finding that the trade dress of a checkbook/carrying case was primarily nonfunctional. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th

Cir.1983). There, the court noted that, while certain features of the checkbook were functional, the jury reasonably could have found that other features were not, such as a decorative box around lines used to record information in the checkbook and the design and color of the carrying case. *Id.* at 983–84.

*Bodum* is also instructive. A handle, cylindrical carafe, and plunger may serve important functions for the plaintiff's coffee maker, but the Seventh Circuit rejected defendant's functionality challenge, because the plaintiff "did not have to prove that something like a handle does not serve any function. It merely needed to prove that preventing competitors from copying [its] particular design would not significantly disadvantage them from producing a competitive and cost-effective French press coffeemaker." 927 F.3d at 498.[8] *Accord Herman Miller, Inc. v. Belnick LLC*, 510 F. Supp. 3d 1342, 1352 (N.D. Ga. 2021) ("[P]roduct's overall appearance is necessarily functional if *everything* about it is functional, not merely if *anything* about it is functional.")

Second, Momcozy's empty allegations concerning marketing materials which "on information and belief" contain statements emphasizing the "utilitarian benefits" of the pocket, Counterclaims ¶ 35, do nothing to move the needle for Momcozy's claim. Setting aside Momcozy's failure to point to any marketing material in its pleading that would purportedly undermine the nonfunctionality of the Tushbaby Trade Dress, Momcozy's allegations ignore that these things are not dispositive. *See Bodum*, 927 F.3d at 493, 496 (explaining that advertising which touted function did not relate to functionality in the legal sense, and excluding utility patents from evidence because they did not "claim the trade dress features in some 'significant way'").

---

[8] As discussed below, Momcozy later alleges that Tushbaby represented to the PTO "that there are alternative product designs to competitors, which is also knowingly false." Counterclaims ¶ 48. Not only is this an outright fabrication of the registration record, but one court has already expressly rejected this very claim, brought by parties represented by the same firm as Momcozy. *See* Lichtman Decl. Ex. A, at 8-40, 78-83; *Tushbaby*, 2024 WL 4627452, at *5 ("[A]s Tushbaby rightly observes, the nonfunctionality of its trade dress as a whole is 'demonstrated by the numerous other designs in the market.").

Third, as explained above, the Southern District of New York has already expressly rejected Momcozy's functionality challenge. Faced with the exact same Trade Dress Application materials that are on the pleadings record here, the court explained that defendants' position that the pocket features were functional—congruous with Momcozy's pleadings—"conflate[d] the ordinary meaning of the term 'functional' with the meaning of the term in the trade dress context. The Tushbaby carrier's pocket features are obviously useful, providing users with storage space for various items and accessories. But that does not mean that these design features, viewed in the aggregate, are essential to effective competition in the baby carrier market." *Tushbaby*, 2024 WL 4627452, at *5. The court further criticized defendants' piecemeal approach, explaining that the Tushbaby Trade Dress "extended to the 'overall look' of the combination of features comprising a product or product line," which must be evaluated "together, not in isolation.'" *Id.*; *see also Bodum*, 927 F.3d at 492 (citing *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (where registrant seeks to protect overall appearance of its trade dress, focus of analysis is on that total appearance rather than individual design elements in isolation)); *see also Ambrit, Inc.*, 812 F.2d at 1538. At bottom, Momcozy's allegations, even taken as true, are built on the assumption that, because a pocket serves some type of function which is useful, that Tushbaby's *particular* design and arrangement of pockets is necessarily functional as a matter of law. This is incorrect.

### Secondary Meaning

Momcozy also asserts that the Tushbaby Trade Dress does not confer trade dress rights because it lacks secondary meaning, *see* Counterclaims ¶¶ 37–45, *i.e.*, that the product design acts as a source identifier. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766, n.4 (1992); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1317 (11th Cir.

2012). Given that the Tushbaby Trade Dress is registered, Tushbaby is entitled to a presumption that the Trade Dress has already acquired secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000); 15 U.S.C. § 1057(b).

Momcozy's challenges as to lack of secondary meaning fail because they consist of conclusory allegations, primarily made under information and belief, which are contradicted by the Trade Dress Application. The PTO clearly believed that Tushbaby had obtained secondary meaning by granting its registration, 15 U.S.C. § 1057(b), and Momcozy's allegations do not plausibly overturn those findings. For example, Momcozy alleges "upon information and belief" that Defendant has "never had any 'look for' advertising for its Tushbaby Trade Dress and there is no evidence can [sic] indicate that consumers associate the asserted Tushbaby Trade Dress with a particular source," Counterclaims ¶ 43, but the Court is not required to accept this as true against an application record rife with evidence of advertising. *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S. D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

Indeed, these "information and belief" allegations are not only not entitled to any presumption of truth; they are, in fact, plainly contradicted by the Trade Dress Application evidence, which speaks for itself. As evidenced by the materials submitted to the PTO, Tushbaby provided ample evidence of the acquired distinctiveness it achieved through five years of use and substantial consumer recognition, including, among other things, unsolicited and solicited press on a massive scale, millions of dollars of spending per year on advertising, and tens of millions of dollars in sales. Lichtman Ex. A, at 42-241; *see, e.g.*, *Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1255 (S.D. Fla. 2021) ("Courts around the country have consistently

required plaintiffs to link their sales to the trade dress.") (citation omitted); *see id.* at 1258 ("unsolicited media coverage of the product" can support a finding of secondary meaning). The PTO plainly believed that this was sufficient evidence of secondary meaning to register the Tushbaby Trade Dress on the principal register. And the Southern District of New York confirmed that this belief was reasonable when it held that Tushbaby had not only established that its trade dress held secondary meaning, but that it was "conceptually and commercially strong." *Tushbaby*, 2024 WL 4627452, at *6.

### Fraud

Finally, Momcozy alleges that Tushbaby obtained its Tushbaby Trade Dress registration fraudulently, "through knowing misrepresentations to the PTO." Counterclaims ¶¶ 46–49. Obtaining a trademark registration by supplying the PTO with fraudulent statements is a basis for canceling the registration. *See, e.g., In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("A third party may petition to cancel a registered trademark on the ground that the registration was obtained fraudulently.") (quotation marks omitted); *see also Angel Flight of Georgia*, 522 F.3d at 1209. The heightened pleading requirements of Rule 9(b) apply to a cause of action for the cancellation of a trademark based on fraud. *See Island Co. LLC v. Abercrombie & Fitch Co.*, 2014 WL 12489851, at *2 (S.D. Fla. Feb. 19, 2014).

To sustain its burden, Momczoy must show that Tushbaby made a "false, material representation with intent to deceive the PTO." *Island Co. LLC*, 2014 WL 12489851, at *2 (quoting *In re Bose Corp.*, 580 F.3d at 1245). As an initial matter, while Momcozy purports that Tushbaby made misrepresentations to the PTO, it cannot identify any, because the entire premise underlying Momcozy's fraud theory—that the Tushbaby Trade Dress is functional—has been debunked, as discussed above. But even setting that aside, Momcozy's allegation that Tushbaby

committed "misrepresentations" with respect to the functionality is not properly pleaded—there is no allegation that any misrepresentation was material, nor that there was any intent to deceive— and it is an unworkable premise, because functionality "is not a material fact per se which can be withheld from the PTO. Rather, it is a traditional affirmative defense to an action for trademark infringement on which the defendant bears the burden of proof." *Northwestern Corp. v. Gabriel Mfg. Co.*, 1996 WL 251433, at *5 (N.D. Ill. May 8, 1996); *Spirit Clothing Co. v. Jerry Leigh of California, Inc.*, 2017 WL 5891056, at *3 (C.D. Cal. June 30, 2017) (same).

Here, Momcozy offers nothing more than legal conclusions and half-pleaded claims. It does not identify the "who, what, when, where, and how of the allegedly false statements" nor does it allege how "those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *Northwestern Corp.*, 1996 WL 251433, at *6 (dismissing fraud on the PTO claim premised on functionality). Momcozy does not even allege facts going to Tushbaby's purportedly deliberate intent to mislead the PTO, as is required to prove fraud. *See Island Co. LLC*, 2014 WL 12489851, at *3 (noting while Rule 9(b) permits "states of mind, including knowledge, to be plead generally" a claim must explain that the misrepresentation was made with intent to deceive the PTO).

Indeed, Momcozy's sole fact allegation, which states in conclusory fashion that Tushbaby "also alleged that there are alternative product designs to competitors, which is also knowingly false," does not plausibly support a claim for fraud, and is outright contradicted by the Trade Dress Application, which did not just "allege" the existence of alternative product designs, it proved it. Licthman Ex. A, at 8-40, 78-83; *Tushbaby*, 2024 WL 4627452, at *5 ("[A]s Tushbaby rightly observes, the nonfunctionality of its trade dress as a whole is 'demonstrated by the numerous other designs in the market.'"); *Tushbaby*, 2024 WL 4769686, at *2 (denying reconsideration and noting,

"ignoring the many other carrier designs on the market, [defendant] asserts without support that 'protection of the round pouch apparently places enormous burden on all the rest [of the] competitors.' At bottom, these are arguments that the Court addressed and rejected."). Because there are "no set of facts" consistent with the pleadings under which Momcozy could obtain relief, Count II should be dismissed with prejudice.

### F. Count III for Unfair Competition Fails to State a Claim

Count III, which asserts that an unfair competition claim under the Lanham Act (15 U.S.C. § 1125), fails for similar reasons. As a threshold matter, Count III is premised on Tushbaby's alleged "misrepresentations," which, as discussed above is a nonstarter. *See* Counterclaims ¶ 55. And the balance of the allegations, made on "information and belief," and based simply on "unlawful acts set forth above" somewhere in the Counterclaims, are legal conclusions, which cannot be sustained. *Id.* at ¶¶ 56–57. Those claims are that Tushbaby—*on information and belief*—told customers and suppliers that Momcozy's hip carrier was an infringing product and subsequently obtained a temporary restraining order in this case based on unspecified purported false statements. *Id.* Such alleged conduct is simply not actionable as a matter of law.

Momcozy's legal conclusions and threadbare facts made on information and belief should be afforded no weight or given any presumption of truth. But even if they were, those allegations are insufficient to sustain a claim for unfair competition. An unfair competition claim under 15 U.S.C. § 1125(a)(1) fall into one two categories—passing off and false advertising—both of which relate to "false or misleading descriptions of fact in *commercial advertising and promotion*." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1234 (11th Cir. 2004) (emphasis added). To satisfy the requirements of section 1125(a), Momcozy must allege specific statements that were either "(1) commercial claims that are literally false as a factual matter" or "(2) claims that may be

16

literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive customers." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). Put another way, Momcozy must show "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services;" and (4) "the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (citation omitted; cleaned up).

Here, nothing in the Counterclaims explains where such purported statements to consumers and suppliers were made, what their context was, including whether they were even "commercial advertising or promotion," as is required under 15 U.S.C. § 1125(a), and whether Tushbaby had any ill intent with respect these alleged "information and belief" statements which are not identified, and which this Court need not assume to be true. Without knowing what the what, when, why, or where, it is not possible to determine whether they satisfy the requirements of section 1125. *Suntree Techs..*, 693 F.3d at 1349; *see also Concordia Pharms. Inc., S.A.R.L. v. Winder Lab'ys, LLC*, 2021 WL 3573118, at *15 (N.D. Ga. Feb. 17, 2021) ("[W]hen statements are so broadly disseminated, they are much more likely to constitute commercial advertising."). In addition, Momcozy separately fails to establish the materiality of such unspecified statements— that even if these unspecified *possible* statements were made, that such statements were "likely to influence the purchasing decision" of consumers or suppliers. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("The materiality requirement is based on the premise that not all deceptions affect consumer decisions.").

17

Next, as to Momcozy's claims that an application for a TRO constitutes unfair competition, the Court should easily dispense with that argument for two simple reasons. First, nothing in the Counterclaims explains how such arguments in a court pleading satisfy the requirements of the Lanham Act, as set forth above, which requires statements made "in commerce." 15 U.S.C. § 1125(a)(1). Second, the unspecified statements or legal arguments in the TRO application are protected by the *Noerr-Pennington* doctrine.

The First Amendment right to "petition the Government for a redress of grievances" immunizes parties who petition the government to achieve anticompetitive outcomes from antitrust liability. *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Eleventh Circuit has held that such immunity, commonly called *Noerr-Pennington* immunity, extends to litigation and pre-litigation activity, such as sending cease-and-desist letters. *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir.2005); *Atico Int' l USA, Inc. v. Luv N' Care, Ltd.,* 2009 WL 2589148, at *2 (S.D. Fla. Aug.19, 2009). "[E]ngaging in litigation to seek an anticompetitive outcome from a court is First Amendment activity that is immune from antitrust liability." *Andrx*, 421 F.3d at 1234. Courts in this district have applied the *Noerr-Pennington* doctrine to similar cases, finding that trademark owners like Tushbaby cannot be held liable for legitimately enforcing their rights. *See, e.g., Rolex Watch U.S.A., Inc. v. Rainbow Jewelry, Inc.*, 2012 WL 4138028 (S.D. Fla. Sept. 19, 2012); *Dell, Inc. v. 3K Computers, LLC*, 2008 WL 6600766 (S.D. Fla. Oct. 7, 2008).

The sole exception to the doctrine is for sham proceedings, that is, when a litigant "does not really want the relief ostensibly sought from the court or agency." *City of Gainesville v. Fla. Power & Light Co.,* 488 F.Supp. 1258, 1265 (S.D. Fla. 1980) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 516, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)). Accordingly, where

the *Noerr-Pennington* doctrine applies, as it does here, the only way to overcome immunity is to establish that: "(1) the lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the party bringing the allegedly baseless suit did so with a 'subjective motivation ... to interfere directly with the business relationships of a competitor." *Andrx Pharm.,* 421 F.3d at 1234 (quoting *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 62, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)) (cleaned up).

Here, the Court should dispense with Momcozy's Counterclaims based on Tushbaby's protected First Amendment activity in seeking injunctive relief against Momcozy in this case. Nothing in the Counterclaims suggests that the TRO application or the underlying lawsuit is frivolous. *PODS Enterprises, Inc. v. ABF Freight Sys., Inc.*, 2011 WL 4948397, at *5 (M.D. Fla. Oct. 17, 2011) (*Noerr-Pennington* immunity not overcome because plaintiff failed to allege a "policy of starting legal proceedings without regard to the merits," quoting *Glade Pharm., LLC v. Murphy,* 2006 WL 3694625, at *5 (N.D. Ga. Dec.12, 2006); *see also Glade Pharm.*, 2006 WL 3694625, at *5 ("Saying that [plaintiff] has filed many lawsuits is not the same thing as alleging that [plaintiff] has a policy of filing multiple suits to injure competition."); *Atico Int'l,* 2009 WL 2589148, at *3 (Momcozy must show the underlying litigation/TRO application was so "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," quoting *Prof'l Real Estate Investors.,* 508 U.S. 49 at 57, 60). To the contrary, Tushbaby has already obtained a preliminary injunction over the objections of several other parties represented by Momcozy's counsel, based on the Court's findings that Tushbaby was likely to succeed on the merits of its trade dress claims. *Tushbaby,* 2024 WL 4627452, at *8.

Accordingly, Momcozy cannot sustain its burden. It cannot demonstrate that this litigation or Tushbaby's TRO application was frivolous or baseless, because it is not. Momcozy ignores that

this Court, on the evidence submitted, granted the TRO application, and further ignores that it filed this Counterclaim—in which it disingenuously accuses Tushbaby of willfully misleading this Court—*less than one week* after a sister court, faced with the exact same issues, entered a preliminary injunction in Tushbaby's favor over the opposition of companies represented by the same counsel. Simply put, Tushbaby is advancing this litigation to protect its trademark rights, and Momcozy provides no allegations to the contrary. *See Rolex*, 2012 WL 4138028, at *4 (dismissing counterclaim with prejudice under *Noerr-Pennington* because Rolex was "at least in part" seeking to "protect its trademark, not merely to interfere with [the other party's] business affairs").

### III.     CONCLUSION

For all these reasons, the Court should grant Tushbaby's motion to dismiss Momcozy's Counterclaims in their entirety and Counts II and III (with respect to the "misrepresentation" and TRO-related claims) with prejudice.

Dated: November 26, 2024

                                        Respectfully submitted,

                                        **James M. Slater**
                                        James M. Slater (FBN 111779)
                                        ESCA Legal LLC
                                        9000 Dadeland Blvd. #1500
                                        Miami, FL 33156
                                        Tel.: (305) 523-9023
                                        james@esca.legal

                                        Leo M. Lichtman (admitted *pro hac vice*)
                                        ESCA Legal LLC
                                        1117 Sixth Avenue, Fifth Floor
                                        New York, NY 10036
                                        Tel.: (347) 745-2535
                                        leo@esca.legal

                                        *Attorneys for Plaintiff/Counter-Defendant*
                                        *TushBaby Inc.*