UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

TUSHBABY, INC.,

    Plaintiff,

v.

THE CORPORATIONS, LIMITED
LIABILITY COMPANIES, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.

Case No. 24-cv-20941-DSL

**MOMCOZY'S OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS ITS COUNTERCLAIMS**

Defendant Momcozy Maternity Essential ("***Momcozy***" or "***Defendant***"), by and through its undersigned counsel, hereby respectfully submits this Opposition to Plaintiff Tushbaby Inc.'s ("***Tushbaby***" or "***Plaintiff***") Motion to Dismiss Momcozy's counterclaims (Dkt. 78).

Tushbaby's Motion is a motion for summary judgement thinly disguised as a motion to dismiss – asking the Court to take judicial notice of hundreds of pages of documents and to rule on the merits of Momcozy's claims. For the reasons discussed below, Momcozy's Counterclaims state a cause of action and the Motion should be denied.

**I.      INTRODUCTION**

Momcozy's Motion starts with a tortured and incorrect recitation of the procedural background of this dispute. As the Court may recall, the parties have already engaged in one round of motion practice regarding Plaintiff's motion for a temporary restraining order ("***TRO***"). In Plaintiff's motion to dismiss, Plaintiff conspicuously avoided mentioning that Defendant's Amazon store generates revenues of $70 million annually, with the allegedly infringing product

1

constituting only a very small portion (2.55%) of that revenue. The TRO, requiring Plaintiff to post only a paltry $10,000 bond, instructs marketplaces like Amazon to "restrain the transfer of all funds" (Dkt. 59, at 7), effectively crippling Defendant's ability to continue its business. Plaintiff also deliberately avoided addressing how its motion conflates its registered trade dress with its unregistered trade dress to mislead the Court. Plaintiff seeks the Court's acknowledgment of the presumed secondary meaning of the registered trade dress while improperly extending protection to the broader scope of its unregistered trade dress. Rather than acknowledging that its preliminary injunction motion was ill-prepared, Plaintiff arrogantly frames its withdrawal of the motion as an act of charity.

Now, Tushbaby moves to dismiss the counterclaims filed by Defendant, arguing that they fail to state claims under Rule 12(b)(6). Tushbaby's motion, however, rests on a misapplication of the legal standard and mischaracterizations of the counterclaims. Momcozy's counterclaims adequately allege factual and legal grounds to proceed with claims for declaratory relief, invalidity, and unfair competition. Tushbaby's trade dress claims are unprotectable under the Lanham Act because they are functional and lack secondary meaning. Additionally, Momcozy's independent creation of promotional photographs rebuts Tushbaby's copyright infringement allegations. For these reasons, the Court should deny Tushbaby's motion in its entirety.

## II.   LEGAL STANDARDS

The standard for dismissing a claim under Rule 12(b) is widely recognized. As Plaintiff has already outlined this standard in its motion, Defendant finds it unnecessary to reiterate it here. Instead, Defendant will proceed directly to presenting its arguments in response.

## III.   ARGUMENT
### A.   COUNT I DECLARATION OF NON-INFRINGEMENT OF U.S. TRADE DRESS REGISTRATION NO. 7,489,071

Plaintiff's argument that Defendant must plead or argue every single factor relevant to determining trade dress infringement, including identifying "relevant marketplaces," grossly exceeds the requirements at the pleading stage.

At this stage, Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It is also well established that likelihood of confusion is a critical element in determining trade dress infringement. Without a likelihood of confusion, there can be no infringement. Plaintiff's argument imposes an unwarranted burden on Defendant to address factors prematurely, despite the centrality of this single dispositive issue.

In determining whether a likelihood of confusion exists, the fact finder evaluates a number of elements including: the strength of the trade dress, the similarity of design, the similarity of the product, the similarity of retail outlets and purchasers, the similarity of advertising media used, the defendant's intent, and actual confusion. A court must evaluate the weight to be accorded the individual factors and then make its ultimate decision. The appropriate weight to be given to each of these factors varies with the circumstances of the case. *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986).

It is the Eleventh Circuit's position that "district court's failure to consider all the factors relevant to the issue of whether two marks are confusingly similar does not necessarily constitute reversible error." *Dippin's Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1207–08 (11th Cir. 2004). **This means that, under certain circumstances, the court can make a decision by considering only some of the relevant factors without reviewing all of them, as long as the decision is still supported by the overall evidence**.

In this case, Defendant adequately pleaded facts addressing the central issue of likelihood

of confusion: Defendant alleged substantial differences between its product and Plaintiff's registered trade dress, highlighting distinctions such as the lack of a flap and mesh pockets (Counterclaims ¶¶ 11–12). Defendant has alleged that its product is "dissimilar" to Plaintiff's registered trade dress when viewed holistically, as shown below.



| Counterclaim-Defendant's *Registered* Trade Dress | (Demonstrative)*Registered* Trade Dress | Counterclaim-Plaintiff's product |
|---|---|---|
| (Most of them are dashed lines) | | |

Plaintiff's reliance on the absence of allegations about "relevant marketplaces" (Dkt. 78, at p. 8) is a deliberate attempt to shift the burden of proof prematurely. Plaintiff incorrectly conflates the factors for determining likelihood of confusion (a fact-intensive inquiry) with the pleading requirements. Defendant's allegations regarding the dissimilarity of the trade dress and lack of confusion are sufficient under Rule 8(a). Plaintiff's demands that Defendant plead or argue every factor related to trade dress infringement, including identifying "relevant marketplaces," exceed the legal requirements and misinterpret Eleventh Circuit precedent. Defendant has sufficiently pleaded the absence of likelihood of confusion and provided specific facts to support its counterclaims. Further factual development on additional factors, such as "relevant marketplaces," will naturally occur during discovery. Plaintiff's motion to dismiss on this basis should therefore be denied.

**B.     COUNT II DECLARATION OF INVALIDITY AND ORDER OF CANCELLATION OF U.S. TRADE DRESS REGISTRATION NO. 7,489,071**

Again, Plaintiff's motion once again conflates the standards for a Rule 12(b)(6) motion to dismiss with those for a motion for preliminarily injunction or summary judgment. Plaintiff devotes substantial argumentation to why its registered trade dress should not be canceled, seeking to prematurely litigate the merits of functionality at this stage. Plaintiff has not shown why Momcozy's counterclaims fail to state a cause of action for a declaratory judgment as to the valiidy

**Functionality**

Plaintiff devotes substantial argumentation to why its registered trade dress should not be canceled, seeking to prematurely litigate the merits of functionality at this stage. However, it is well established that a Rule 12(b)(6) motion is not the proper forum to resolve factual disputes such as whether the trade dress is functional. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 (11th Cir. 1983) ("The issue of functionality has been consistently treated as a question of fact."). Discovery is specifically designed to address disputes such as the functionality of a trade dress. Plaintiff's attempt to sidestep this process and argue the ultimate merits of its case is premature and procedurally improper.

Defendant's counterclaims specifically address the functionality of Plaintiff's registered trade dress, which is limited to the "little pouch" as described in the registration, not the entirety of the baby hip seat carrier. Plaintiff's arguments about the functionality of the entire product (e.g., the baby hip carrier as a whole) are misplaced and irrelevant to this analysis.

At this stage, the question is not whether Plaintiff's trade dress is ultimately functional but whether Defendant has sufficiently alleged functionality of Plaintiff's registered trade dress to survive a Rule 12(b)(6) motion. Defendant's counterclaims meet this standard.

For example, Defendant explicitly alleges in its counterclaim (Dkt. 77, ¶31) that:

"The shape of the Tushbaby Trade Dress depicted and described in the 071 Registration is functional in that: (a) it is purely functional to provide additional storage space; (b) its shape, size, and thickness are more or less shaped in order to be suitable for the front design of the product; (c) its positioning and size of the baby hip seat carrier product is within narrow parameters for compatibility with the product to provide maximum storage space."

Defendant further alleges (Dkt. 77, ¶34) that: "[m]any competitors of Counterclaim-Defendant around the world manufacture and sell baby hip seat carrier products that are in the shape of the front pocket depicted and described in the Tushbaby Trade Dress."

These allegations, which align with the Supreme Court's functionality test, are sufficient to state a plausible claim for functionality. Specifically, Defendant alleges that the registered trade dress provides utilitarian benefits (*e.g.*, storage space) and is a design feature necessary for effective competition in the market. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775 (1992) ("A design is legally functional, and thus unprotectable, if it is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection.").

Defendant's allegations, taken as true at this stage, raise a factual dispute regarding whether Plaintiff's registered trade dress is functional. Discovery / a motion to dismiss is the appropriate mechanism for resolving this dispute, not a Rule 12(b)(6) motion.

**Secondary Meaning**

A presumption of secondary meaning beginning only as of the date of registration and confers no presumption of secondary meaning before the date of registration. *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1117-18 (Fed. Cir. 2018) ("…at the time of registration the [US]PTO is not asked to determine whether secondary meaning had been acquired at some previous date, and therefore registration cannot support a presumption for the

period before registration"). Here, Tushbaby's trade dress registration did not issue until August 27, 2024, *i.e.*, several months after Tushbaby filed a complaint in this case on March 11, 2024. Thus, with respect to infringement by Defendant whose first uses came before the registration, Plaintiff must establish – without the benefit of any presumption – that its mark had acquired secondary meaning before the first alleged infringing use by Momcozy.

In its counterclaim, Defendant has adequately alleged that Plaintiff's registered trade dress lacks secondary meaning. Secondary meaning occurs when the trade dress has developed consumer recognition as a source identifier, beyond its mere functional or aesthetic value. The Lanham Act requires a product's trade dress to serve as a symbol of origin to be protectable, but Plaintiff has failed to demonstrate that its design has acquired such recognition in the marketplace.

In its counterclaim, Defendant has adequately alleged that Plaintiff's registered trade dress lacks secondary meaning. Defendant's counterclaim (Dkt. 77, ¶¶ 37-42) specifically challenges Plaintiff's claim of secondary meaning by alleging that Plaintiff's trade dress—namely, the configuration of the front pocket and flap—is a common design feature in the market. Defendant asserts that the pocket design is not distinctive and that there are numerous competitors using similar designs for their baby hip seat carriers (Dkt. 77, ¶ 44). This is a factual dispute that can only be resolved through discovery, not at the pleading stage.

Defendant further alleges that Plaintiff has not provided sufficient evidence of consumer recognition to support its claim of secondary meaning. Specifically, Defendant points out that Plaintiff has not submitted consumer studies or significant evidence showing that consumers associate the design of the pocket and flap with Plaintiff as the source (Dkt. 77, ¶¶ 40-41). Moreover, Defendant asserts that Plaintiff's sales of the product over a six-year period (from 2018-2024) are insufficient to establish secondary meaning, given the lack of consumer advertising or

direct attempts to encourage consumers to identify the design as originating from Plaintiff (Dkt. 77, ¶ 42). These allegations raise a plausible claim that Plaintiff's trade dress lacks the necessary consumer association to qualify for protection under the *Lanham Act*.

Finally, Defendant's allegations of Plaintiff's failure to provide adequate proof of secondary meaning, including the lack of "look for" advertising[1] (Dkt. 77, ¶ 43), are sufficient to withstand Plaintiff's motion to dismiss. The absence of this type of evidence supports Defendant's position that Plaintiff's trade dress has not achieved the level of distinctiveness required for trademark protection. As established by the courts, the burden of proving secondary meaning rests with the plaintiff, and Plaintiff's failure to present such evidence renders its trade dress unprotectable.

**C.     COUNT III UNFAIR COMPETITION**

Based on misapplied legal standards, Tushbaby maintains that Momcozy has failed to state a claim for false advertising under the Lanham Act.  Contrary to Tushbaby's assertions, no heightened pleading standard applies to false advertising claims under the Lanham Act and thus Momcozy is not required to allege the "what, when, why, or where" to support its claim.  (MTD, ECF No. 78 at 17).  *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A*, No. 20-24681-Civ-Scola, 2021 U.S. Dist. LEXIS 158426, at *8-9 (S.D. Fla. Aug. 23, 2021) ("Rule 9(b)'s heightened pleading requirements do not apply to … claims for false advertising under the Lanham

---

[1] As the Trademark Trial and Appeal Board has explained:

> 'Look for' advertising refers to advertising that directs the potential consumer in no uncertain terms to look for a certain feature to know that it is from that source. It does not refer to advertising that simply includes a picture of the product or touts a feature in a non-source identifying manner.

Kohler Co. v. Honda Giken Kogyo K.K. , 2017 TTAB LEXIS 450, *164, 125 U.S.P.Q.2D (BNA) 1468, 1517 (Trademark Trial and Appeal Board December 13, 2017)

Act[.]").² And none of the cases cited by Tushbaby in support of its Motion even address the standard of review on a motion to dismiss,³ which does not require "a plaintiff to provide evidence for the factual allegations in a complaint before they are entitled to the assumption of truth[.]" *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (internal quotations and citations omitted). Here, Momcozy has alleged that Tushbaby has falsely stated to customers, prospective customers, and suppliers that Momcozy's products infringed Tushbaby's purported trade dress. (CC, ECF No. 77, ¶ 56). In the patent infringement context, district courts routinely find that false allegations of infringement can support an unfair competition claim. *See, e.g.*, *Garmon Corp. v. Vetnique Labs, LLC*, No. 19 C 8251, 2020 U.S. Dist. LEXIS 108603, at *16–17 (N.D. Ill. June 22, 2020); *Unicorn Glob., Inc. v. GoLabs, Inc.*, 447 F. Supp. 3d 535, 545 (N.D. Tex. 2020). Unlike the patent infringement context, however, a plaintiff alleging unfair competition based on false allegations of trademark infringement need not prove bad faith. *See Zenith Elecs. Corp. v. Exzec, Inc*., 182 F.3d 1340, 1353 (Fed. Cir. 1999) (noting that "§43(a) alone does not require bad faith" but requiring bad faith in patent cases as "a function of the interaction between the Lanham Act and patent law"). Accordingly, and particularly in light of the absence of any bad faith requirement here, Momcozy's allegations more than suffice to state a claim for unfair competition and Tushbaby's motion should be denied.

### D. PLAINTIFF'S SHOTGUN PLEADING ARGUMENT

While Plaintiff's motion attempts to categorize Defendant's counterclaims as impermissible "shotgun pleadings," the case law provides guidance on how to evaluate whether a

---

² *See also Am. Airlines, Inc. v. Spada*, No. 23-21844-CIV, 2024 U.S. Dist. LEXIS 32525, at *19 (S.D. Fla. Feb. 23, 2024) ("The Eleventh Circuit has not decided whether Rule 9(b) applies to claims under the Lanham Act, and the courts in this District are split on the question of what standard applies.").
³ Notably, *Suntree* and *Concordia* addressed motions for summary judgment and *Osmose* and *Johnson* addressed claims for preliminary injunctive relief.

9

pleading is sufficiently clear to give the opposing party fair notice of the claims. *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir.2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading.") Defendant's counterclaims do not fall within this category, as they are clear, concise, and logically connected.

Defendant's counterclaims—particularly Counts I, II, and III—are logically connected and form a coherent argument. Count I asserts that Defendant does not infringe Plaintiff's registered trade dress because the products are not similar. Count II challenges the validity of Plaintiff's trade dress, arguing that it lacks secondary meaning and is functional, which renders it unprotectable. Count III then links these two previous claims to allege that Plaintiff engaged in unfair competition by obtaining a TRO based on misrepresentations and causing harm to Defendant's business by having its products removed from Amazon. These claims are interdependent and should not be viewed in isolation.

Defendant's counterclaims, when viewed in their entirety, clearly inform Plaintiff of the legal theories being asserted. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1326 (11th Cir. 2015), makes clear that the key consideration is whether the pleading provides sufficient clarity to give the opposing party fair notice of the claims. Each counterclaim provides a clear legal theory, and the factual allegations supporting those theories are sufficiently detailed to inform Plaintiff of the grounds upon which the claims rest.

Plaintiff's registered trade dress is invalid for multiple reasons, including the lack of secondary meaning and the functionality of the design, as set forth in Count II. Since Count I already establishes that Defendant does not infringe Plaintiff's trade dress, Count II further supports the claim that the trade dress is unprotectable. Plaintiff's motion to dismiss fails to

10

recognize the interconnectedness of these claims and overlooks the fact that they are presented in a logical and cohesive manner.

Count III ties everything together by alleging that Plaintiff engaged in unfair competition through misrepresentations made to Defendant's business associates (e.g., Amazon) in removing Defendant's products from the Amazon platform. These claims are not separate or improperly pleaded; rather, they are a well-structured argument that demonstrates the harm Plaintiff has caused through its actions and misrepresentations. The claims are not shotgun pleadings but a carefully constructed narrative that logically leads from one claim to the next.

Even if the Court were to find merit in Plaintiff's shotgun pleading argument, dismissal is not the appropriate remedy at this stage. The Eleventh Circuit has consistently held that a court should give a party an opportunity to replead before dismissing a pleading on this basis. In *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir.1996), the court emphasized that a defendant faced with a shotgun pleading should move for a more definite statement under Rule 12(e). [Courts] have also advised that when a defendant fails to do so, the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead. *Id.* at 367; *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir.2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs' [sic] failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*."); *Cramer v. Florida,* 117 F.3d 1258, 1263 (11th Cir.1997) ("[W]e note that the district court, acting on its own initiative, should have stricken [the shotgun pleading] and instructed counsel to replead their cases....").

Thus, at the very least, Defendant should be afforded an opportunity to replead its counterclaims should the Court find any deficiencies. However, Defendant respectfully submits

11

that its counterclaims, as currently pleaded, are sufficiently clear and should not be dismissed..

## IV. CONCLUSION

For the reasons stated above, Momcozy respectfully requests that the Court deny Tushbaby's Motion to Dismiss in its entirety.

/s/ Luca L. Hickman, Esq.
Ruoting Men
GLACIER LAW LLP
41 Madison Ave, Suite 2529
New York, NY 10010
Ruoting.men@glacier.law
212-729-5049


Brandon T. Holmes, Esq. (FBN 1007975)
Luca L. Hickman, Esq. (FBN 118731)
Dinsmore & Shohl LLP
Tampa City Center
201 North Franklin Street, Suite 3050
Tampa, Florida 33602
Telephone: (813) 543-9835
Email: luca.hickman@dinsmore.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Florida, using the electronic case filing system of the court.

December 10, 2024

/s/ Luca L. Hickman