UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TUSHBABY, INC., | Case No. 1:24-cv-23233-LEIBOWITZ |
| Plaintiff/Counter-Defendant, | Consolidated Under Lead Case No. 1:24-cv-20941 |
| v. | |
| MOMCOZY MATERNITY ESSENTIALS, | |
| Defendant/Counterclaimant. | |

**TUSHBABY'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS MOMCOZY'S COUNTERCLAIMS**

## I. INTRODUCTION[1]

Tushbaby moved to dismiss Momcozy's Counterclaims because the allegations, even if true, do not plausibly support the relief Momcozy seeks. Far from rebutting this contention, Momcozy's opposition [ECF No. 79] further supports Tushbaby's motion by offering distractions, contradictions, and inflammatory remarks, without actually addressing the sufficiency of its pleadings. For instance, Momcozy's opposition characterizes Tushbaby's motion as a "motion for summary judgment thinly disguised as a motion to dismiss" [ECF No. 79, at 1], yet ironically faults Tushbaby for not mentioning that Momcozy's infringement purportedly makes up a small part of its revenues—an extra-pleading allegation that has nothing to do with Momcozy's Counterclaims. [*Id.*] Momcozy's opposition further suggests that Tushbaby "deliberately avoided addressing how its motion conflates its registered trade dress with its unregistered trade dress to mislead the Court," but this, again, has nothing to do with Momcozy's Counterclaims, and is, in any event, a blatant mischaracterization of Tushbaby's positions that has already been roundly rejected.[2]

Rather than address the sufficiency of its pleadings, the opposition seeks to malign Tushbaby's character, but nothing in Momcozy's blunderbuss opposition changes the fact that Momcozy's *pleadings* remain deficient. Momcozy thus fails to rebut Tushbaby's motion,

---

[1] Capitalized terms are as defined in Tushbaby's motion to dismiss [ECF No. 78.]

[2] In a substantially similar matter pending in the Southern District of New York, Momcozy's counsel, who is representing several of the defendants there, made the exact same accusation, despite the fact that Tushbaby has clarified, repeatedly, that the portion of its trade dress covered by the registration (which was issued after the original complaint was filed) constitutes *a subset* of the trade dress as originally alleged, prior to when the registration issued. In the pending New York matter, the court agreed, finding that the registration supported a presumption of validity because the registration covered features that were encompassed within the broader trade dress as originally alleged, and that the defendants' assertion to the contrary was "plain wrong." *Tushbaby, Inc. v. Jinjang Kangbersi Trade Co., Ltd.*, 2024 WL 4627452, at *4 (S.D.N.Y. Oct. 30, 2024).

demonstrating that its pleading is deficient and causes of action fail as a matter of law.

II. **Momcozy Fails to Plead Facts Which, If True, Create a Basis for a Declaration of Non-Infringement (Count I).**

Momcozy's opposition correctly notes that a likelihood of confusion determination is made upon the consideration of numerous factors, which are weighed together according to the circumstances of each case. [ECF No. 79, at 3]. It is curious then why Momcozy continues to assert that its allegations, which relate to only *one single* factor (similarity of the marks)—and only partially at that—are enough to sustain Momcozy's affirmative claim for relief.

Momcozy's opposition instead accuses Plaintiff of trying to shift the burden of proof prematurely by pointing to an absence of allegations about "relevant marketplaces. [ECF No. 79, at 4]. This misses the point. While the substantive burden of proof on Tushbaby's infringement claim lies with Tushbaby, it is *Momcozy* that has chosen to seek a distinct procedural advantage by affirmatively suing for a declaration of non-infringement. And, as the claimant with respect to its own affirmative claim, Momcozy is bound by Rule 8 to provide *some* basis for why its claim entitles it to relief. *See Bell Atl. Corp. v. Twombly.*, 550 U.S. 544, 555 (2007) (to survive dismissal, a complaint must plead enough facts to state a plausible basis for a claim). Yet its sole allegation, that there are some differences in the parties' products when presented side-by-side and in isolation—which is not even the proper framework for the likelihood of confusion analysis[3]— renders Momcozy's claim for relief entirely unclear.

III. **Momcozy Fails to Plead Facts Which, If True, Provide Grounds to Invalidate Plaintiff's Trade Dress Registration (Count II).**

---

[3] *See, e.g., Guantanamera Cigars Co. v. SMCI Holding, Inc.*, 2022 WL 1288742, at *7 (S.D. Fla. Apr. 29, 2022) ("The question for the Court, however, is not simply whether the characteristics of the mark are similar when the two products are compared side-by-side. Rather, the Court must examine how the marks are encountered in the marketplace.").

As a threshold matter, Momcozy faults Tushbaby for asking the Court to "take judicial notice of hundreds of pages of documents." [ECF No. 79, at 1]. Momcozy conveniently ignores that the only extra-pleading document Tushbaby has asked the Court to consider is the application for the very trade dress registration that Momcozy seeks to invalidate. This document—which the Counterclaims indisputably implicate—are explicitly referenced in, and integral to, the Counterclaims. [*See* ECF No. 77, at 14-15 ¶¶ 40-41, 46, 47 (repeated reference to alleged "documents" and "representations" that Tushbaby submitted to the PTO)]. It is therefore properly considered on a Rule 12(b)(6) motion. *See In re Ohai*, 2023 WL 5439811, at *8 (Bankr. N.D. Ga. Aug. 23, 2023) (on a motion to dismiss, the court may consider "documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed"); *Gentry v. Carnival Corp.*, 2011 WL 4737062, at *5 (S.D. Fla. Oct. 5, 2011) (noting that the Eleventh Circuit considers outside documents on a motion to dismiss where they are "referred to in the . . . . complaint" and "are central or integral to the . . . claim").[4]

Indeed, the PTO granted Tushbaby a registration upon its review of these very same documents—a decision that Momcozy is now affirmatively challenging by seeking a judicial declaration that the registration is invalid. But Momcozy's allegations, even if true, do not overcome the PTO's determination, and the presumption of validity that comes with that

---

[4] Moreover, courts routinely take judicial notice of publicly available documents that were submitted to the PTO, such as trademark applications. *See, e.g., BPI Sports, LLC v. Thermolife Int'l LLC*, 2020 WL 10180910, at *3 (S.D. Fla. Jan. 8, 2020) (taking judicial notice of trademark registration and oppositions, and noting that courts "have found that the contents of an administrative agency's publicly available files traditionally qualify for judicial notice."); *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 2023 WL 5505002, at *4 (C.D. Cal. Aug. 14, 2023) (taking judicial notice of documents filed with PTO in connection with trademark application); *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 752 (S.D.N.Y. 2021) ("[Plaintiff] did not submit its trademark application with the Complaint, but the Court may properly take judicial notice of it under Rule 201(b)(2), Fed. R. Evid.").

determination. *See Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F. 4th 989, 1004 (11th Cir. 2021).

First, Momcozy attempts to hold onto its alleged functionality challenge by manufacturing factual disputes, but does not actually identify any legitimate factual disputes. Instead, it reiterates the same allegations, which, as Tushbaby previously explained, amount to usefulness at most. [ECF No. 78, at 10-11]. This is because a finding that a design feature is useful does not necessitate a finding that the design feature is *essential* to the use or purpose of the product. [*Id.*]; *see Tushbaby*, 2024 WL 4627452, at *5 ("The TushBaby carrier's pocket features are obviously useful . . . . [b]ut that does not mean that these design features, viewed in the aggregate, are essential to effective competition in the baby carrier market.").

Second, Momcozy argues that Tushbaby is not entitled to the benefit of any presumption of secondary meaning because Tushbaby's registration did not issue until after Momcozy's infringing conduct began. [ECF No. 79, at 6-7]. Momcozy cites no authority for this proposition, which is in any event, immaterial for purposes of Momcozy's claim. The issue, for purposes of Momcozy's Count II, is not when Tushbaby's registration issued. Rather, the issue is whether Momcozy has plausibly laid out a challenge to the validity of Tushbaby's registration—which undoubtedly *did* issue. [ECF No. 41-1]. And to do that, Momcozy must allege facts which, if true, plausibly rebut the presumption of secondary meaning. *See Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 783 (11th Cir. 2020) ("[I]n order to successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark is not distinctive.").

As to that issue, Momcozy offers bare conclusions, contradicted by the registration record itself. For instance, Momcozy alleges in conclusory fashion that the trade dress "does not function

as a source identifier," and that the documents submitted to the PTO "are far from established [sic] the secondary meaning." [ECF No. 77, at 13-14 ¶¶ 28, 40]. Neither of these are plausible without supporting facts. *See, e.g., Johns v. Tony*, 2023 WL 9327362, at *2 (S.D. Fla. Dec. 20, 2023), aff'd sub nom. *Johns v. Broward Cnty. Sheriff*, 2024 WL 3984062 (11th Cir. Aug. 29, 2024) (dismissing § 1983 claim because allegations that defendant "engaged in pattern and practice of tacitly authorizing . . . excessive force" and "had an official policy . . . which caused police officers to use excessive force" were insufficient "without any factual support to support these conclusory allegations"). Instead, Momcozy points to the alleged absence of evidence, notwithstanding the significant evidence of secondary meaning which was submitted to the PTO incorporated in the pleadings, including evidence of *inter alia* prolific media coverage, a massive marketing budget, consumer awards, significant social media engagement, and tens of millions of dollars in sales. [*See* ECF No. 78-2, at 41-241]. Indeed, even the Southern District of New York considered this to constitute "ample evidence that [Tushbaby's] product's advertising and media coverage prominently bear and promote the carrier's unique design," which, along with "sales success, advertising expenditures, unsolicited media coverage showcasing its trade dress," and the "existence of several imitations on the market," demonstrated secondary meaning. *Tushbaby*, 2024 WL 4627452, at *4.

Third, Momcozy's opposition does not even attempt to defend the sufficiency of its allegation that Tushbaby made "knowing misrepresentations" to the PTO. [ECF No. 78, at 14]. Accordingly, Momcozy apparently concedes that this allegation cannot withstand scrutiny. *See, e.g., Brown v. Bank of N.Y. Mellon Corp.*, 2017 WL 8185751, at *9 (N.D. Ga. Dec. 14, 2017) (noting that failure to respond to arguments relating to a claim constitutes abandonment of the claim); *Graham-Kilby v. J.P. Morgan Chase, N.A.*, 2023 WL 2908831, at *15 (N.D. Ga. Jan. 13,

2023) ("Because Plaintiff has not addressed Meta's personal jurisdiction argument, she has waived any objection to such argument, and the Court finds that Plaintiff has abandoned her claim that personal jurisdiction exists as to Meta."). *E.E.O.C. v. Riverview Animal Clinic, P.C.*, 761 F. Supp. 2d 1296, 1304 (N.D. Ala. 2010) ("Arguments and issues not addressed in an opposition brief are deemed waived.").

### IV. Momcozy's Opposition Establishes That It Cannot Plausibly State a Claim for Unfair Competition (Count III)

In a misguided attempt to correct its pleading deficiencies through briefing, Momcozy for the first time characterizes its unfair competition claim as constituting a "false advertising." [ECF No. 79, at 8]. However, Momcozy does not allege any act of false advertising, or any kind of advertising or promotion for that matter, and the phrase "false advertising" does not even appear in Momcozy's Counterclaims. The Court need not consider Momcozy's claim to constitute one of false advertising simply because it now characterizes it as such. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) ("As [defendant] correctly notes, a complaint may not be amended by briefs in opposition to a motion to dismiss.").[5]

Assuming *arguendo* that Momcozy has even *attempted* to plead a claim for false advertising under the Lanham Act, the allegations are insufficient. To be liable under the Lanham Act for false advertising, a plaintiff must plead enough factual content that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which, in the context of false advertising, requires pleading that (1) the defendant's statements

---

[5] Momcozy also misleadingly argues that no heightened pleading standard applies, but Tushbaby did not argue that it did. Rather, Tushbaby explained in its opening brief that a heightened pleading standard applied to Momcozy's claim under Count II that Tushbaby's registration was invalid due to Tushbaby's alleged "knowing misrepresentations to the PTO." [ECF No. 79, at 14]. This is because Fed. R. Civ. P. 9(b) has been held to apply to causes of action for cancellation of trademarks based on fraud. [*Id.*]. As noted *supra*, Section III, Momcozy does not address Tushbaby's challenge to the sufficiency of this claim, and thus waives it.

7

were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (citations omitted). Moreover, false advertising claims are necessarily limited to speech in the context of "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). This has been construed as "commercial speech by a defendant . . . for the purpose of influencing consumers to purchase the defendant's goods," which is "disseminated sufficiently to the relevant purchasing public in such a way as to constitute advertising or promotion." *Wilchcombe v. Teevee Toons, Inc.*, 515 F. Supp. 2d 1297, 1305 (N.D. Ga. 2007).

While Momcozy alleges that Tushbaby obtained its trade dress registration "through misrepresentations to the PTO" and "wrongfully secured a Temporary Restraining Order based on false allegations of trade dress infringement" [ECF No. 77, at 16, ¶¶ 55, 57], it wisely does not suggest that this meets the requisite "commercial advertising or promotion" requirements of the Lanham Act. In fact, Momcozy does not address Tushbaby's challenge to this allegation at all, essentially abandoning this theory of liability. *Supra*, Section III.[6] Instead, Momcozy's newly-asserted false advertising claim appears to rest solely on its allegation that "[u]pon information and belief," Tushbaby "intentionally, unjustifiably, and maliciously stated to customers, prospective customers and suppliers" that Momcozy's products infringed its trade dress. [ECF No. 77, at 16 ¶ 56]. This empty, conclusory statement, which does not even identify any alleged commercial advertisement or promotion, fails to plead any of the elements for a false advertising

---

[6] Momcozy furthermore does not respond to Tushbaby's argument that such a theory for relief would be barred by the *Noerr-Pennington* doctrine [ECF No. 78, at 18], thereby conceding its preclusive effect here.

8

claim, and the Court need not consider it. *See, e.g., Scott v. Experian Info Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth . . . .") (citations omitted); *It Works Mktg. v. Melaleuca, Inc.*, 2021 WL 1650266, at *17 (M.D. Fla. Apr. 27, 2021) (references to "allegedly false statements" did not identify any "advertisements"). While Momcozy argues that it need not prove bad faith, the Court need not even reach this issue because Momcozy's bare conclusion under "information and belief," which does not even track with the elements of a false advertising claim, is plainly insufficient.

### V.     Momcozy Cannot Dispute That its Counterclaims Constitute a Shotgun Pleading

Momcozy cites *Weiland v. Palm Beach Cnty Sheriff's Office*, 792 F.3d 1313, 1326 (11th Cir. 2015) for the proposition that its pleading provides sufficient clarity. [ECF No. 79, at 10]. But Momcozy does not deny that its Counterclaims "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," which the *Weiland* court described to be the "most common" type of shotgun pleading, condemned by the Eleventh Circuit. 792 F.3d at 1322. While Momcozy suggests Counts I – III are "logically connected and form a coherent argument" [ECF No. 79, at 10][7] this is rhetoric, not a cure for its failure to ascribe to one of the Eleventh Circuit's most basic pleading requirements. *See Keith v. Dekalb Cnty*, 749 F.3d 1034, 1046 n.39 (11th Cir. 2014) (describing the incorporation of all preceding allegations and counts into each successive count as "a quintessential 'shotgun' pleading – the sort of pleading we have been roundly condemning for 30 years"); *see also, e.g., Doe v. Norwegian Cruise Lines, LTD*,

---

[7] Tellingly, Momcozy says nothing of its last count, Count IV, which contains merely three paragraphs and otherwise incorporates the entirety of the Counterclaims—precisely what the *Weiland* court advised claimants not to do. 792 F.3d at 1322.

2024 WL 3791624, at *5 (S.D. Fla. Aug. 13, 2024) (plaintiff's complaint constitutes a shotgun pleading because it "contains 'multiple counts where each count adopts the allegations of the preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.'"); *Jerich USA, Inc. v. Ace Transp. Miami, LLC*, 2024 WL 3845297, at *1 (S.D. Fla. Aug. 15, 2024) ("Before reaching the merits of the Motion's arguments, the Court finds that the Amended Complaint constitutes a shotgun pleading because Count II impermissibly realleges and incorporates all the preceding paragraphs, including those of Count I."); *Jacobs v. Land Home Fin. Servs. Inc.*, 2023 WL 8434580, at *2 (M.D. Fla. Oct. 30, 2023) ("As written, Plaintiffs' Complaint violates the first type of shotgun pleading identified by the Eleventh Circuit . . . . Plaintiffs' Complaint is therefore an impermissible shotgun pleading and must be dismissed.").

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Tushbaby's motion in its entirety.

Dated: December 17, 2024

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
ESCA Legal LLC
9000 Dadeland Blvd. #1500
Miami, FL 33156
Tel.: (305) 523-9023
james@esca.legal

Leo M. Lichtman (admitted *pro hac vice*)
ESCA Legal LLC
1117 Sixth Avenue, Fifth Floor
New York, NY 10036
Tel.: (347) 745-2535
leo@esca.legal

*Attorneys for Plaintiff/Counter-Defendant TushBaby Inc.*