## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

TUSHBABY, INC.,

       Plaintiff,

v.

MOMCOZY MATERNITY
ESSENTIALS,

       Defendant.

MOMCOZY MATERNITY
ESSENTIALS,

       Counterclaim-Plaintiff,

v.

TUSHBABY, INC.,

       Counterclaim-Defendant.

Case No. 24-cv-20941-DSL

### MOMCOZY'S AMENDED COUNTERCLAIMS

This is an action brought under the Declaratory Judgment Act by Counterclaim-Plaintiff Momcozy Maternity Essential ("***Momcozy***" or "***Defendant***" or "***Counterclaim-Plaintiff***"), against Counterclaim-Defendant Tushbaby, Inc ("***Defendant***" or "***Tushbaby***" or "***Counterclaim-Defendant***"). Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Counterclaim-Plaintiff alleges as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57. Counterclaim-Plaintiff seeks

a declaration that it has not infringed any of Counterclaim-Defendant's alleged rights in trade dress U.S. Registration No. 7,489,071 (the "Tushbaby Trade Dress" or "071 Registration"), whether directly, contributorily, or vicariously, and that the Tushbaby Trade Dress is invalid. Additionally, Counterclaim-Plaintiff seeks a declaration of non-infringement concerning Counterclaim-Defendant's copyrights No. VA 2-360-715, VA 2-360-714, VAu 1-511-350, and VA 2-395-564 (collectively, the "Tushbaby Copyrights").

2. A case or controversy exists under the Federal Declaratory Judgment Act because Counterclaim-Defendant has sued Counterclaim-Plaintiff in this Court for trade dress infringement and Copyright infringement.

## THE PARTIES

3. Counterclaim-Plaintiff is a business entity resides in the People's Republic of China

4. Upon information and belief, Counterclaim-Defendant Tushbaby, Inc is a corporation incorporated under the laws of California with its principal address at 1990 N. California Blvd, 8th Floor, Walnut Creek, CA 94596.

## JURISDICTION AND VENUE

5. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the Trademark Law, Copyright Law of the United States.

6. An actual case or controversy exists between the parties to this action. Counterclaim-Defendant has sued Counterclaim-Plaintiff. The circumstances show that there is a substantial controversy between Counterclaim-Plaintiff and Counterclaim-Defendant.

7. Venue is proper in this Court pursuant to 28 U.S.C.§ 1391, and this Court may properly exercise personal jurisdiction over Counterclaim-Defendant since the Counterclaim-Defendant has

submitted to this Court's personal jurisdiction by suing Counterclaim-Plaintiff in this District.

## FACTUAL BACKGROUND

8. Counterclaim-Plaintiff sells baby hip seat carriers, baby bottle warmers and many other kinds of products on Amazon, using the storefront name Momcozy Maternity Essential.

9. Counterclaim-Plaintiff's products are popular and well-established on the Amazon platform.

10. Upon information and belief, Counterclaim-Defendant is also in the business of selling the baby hip seat carrier products.

11. Tushbaby claims exclusive trade dress rights in the design of its baby hip seat carrier.

12. On August 27, 2024, Tushbaby obtained U.S. Trademark Registration No. 7,489,071 for a three-dimensional configuration of a pocket with a flap on the front of a baby hip seat carrier (hereafter the "***Tushbaby Trade Dress***").

13. Tushbaby asserts that this registered configuration is distinctive to its brand.

14. Tushbaby has accused Momcozy of infringing the Tushbaby Trade Dress by selling Momcozy's own baby hip seat carrier product (the "***Accused Product***").

15. In the underlying complaint, Tushbaby alleges that the Accused Product copies or imitates the appearance of Tushbaby's carrier in violation of Tushbaby's trade dress rights.

16. However, as illustrated below, there are significant differences between Tushbaby's registered and alleged unregistered trade dress:



| Counterclaim-Defendant's Asserted *Unregistered* Trade Dress | Counterclaim-Defendant's ***Registered*** Trade Dress | (Demonstrative) ***Registered*** Trade Dress |
|---|---|---|
| (ALL of them are solid lines.) | (Most of them are dotted lines) | |



| Counterclaim-Defendant's Unregistered Trade Dress | Counterclaim-Plaintiff's product |
|---|---|
| "A logo centered on a rounded front pouch with wraparound black straps, side zippered pockets, and mesh side pockets" | The logo is directly printed on the upper center of a solid front pouch (zipper on the side), without a flap, or mesh side pockets |

| Counterclaim-Defendant's *Registered* Trade Dress | (Demonstrative)*Registered* Trade Dress | Counterclaim-Plaintiff's product |
|---|---|---|
|  (Most of them are dashed lines) |  |  |

17. However, the Accused Product is dissimilar to the Tushbaby Trade Dress and is not likely to cause any confusion to consumers.

18. Counterclaim-Defendant is also accusing Counterclaim-Plaintiff of infringement of its Registered Copyright.

19. However, independent creation is a complete defense to a claim of copyright infringement.

20. Counterclaim-Plaintiff photographed a series of images for this product, featuring various compositions, poses, backgrounds, and actions. The photos Counterclaim-Plaintiff used are part of a series of promotional images Counterclaim-Plaintiff created for this product. Counterclaim-Plaintiff hired its own photographer and model, and prior to taking these promotional photos, the Counterclaim-Plaintiff had no knowledge of the Counterclaim-Defendant's copyrighted photos and never referenced them.

21. The Amazon marketplace constitutes Counterclaim-Plaintiff's primary sales channel into the United States. To remain competitive in the United States market for Accused Product, Counterclaim-Plaintiff needs its products listed in the Amazon marketplace.

22. Counterclaim-Defendant's acts as set forth herein have caused, and unless restrained

by the Court, will continue to cause sales of the Accused Product to be lost and/or diverted to Counterclaim-Defendant.

**COUNT I**

**(Declaration of Non-Infringement of U.S. Registration No. 7,489,071)**

23. Counterclaim-Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 22 of this Counterclaim as if fully set forth herein.

24. An actual and justiciable controversy exists between the parties as to whether Momcozy's Accused Product infringes the Tushbaby Trade Dress.

25. Tushbaby has asserted in this action that the Accused Product violates its rights in the Tushbaby Trade Dress. Momcozy denies any such infringement, creating a dispute appropriate for declaratory relief under 28 U.S.C. § 2201.

26. The Tushbaby Trade Dress, as described in U.S. Registration No. 7,489,071, consists of a three-dimensional configuration of a front pocket with a flap on a baby hip seat carrier. This design feature is the purported source-identifying element that Tushbaby claims as its trade dress.

27. Among other differences, Momcozy's Accused Product does not incorporate the pocket-and-flap configuration claimed by Tushbaby.

28. As a non-exhaustive example, in Momcozy's design, the front pouch of the baby carrier is without any flap covering the pocket.

29. As another non-exhaustive example, the shape and arrangement of pockets on Momcozy's product differ substantially from those of Tushbaby's product. The Accused Product features a solid front pouch with a side zipper and no overlying flap, resulting in a different overall appearance from Tushbaby's design.

30. Because of the clear and significant differences in design and appearance, Momcozy's

Accused Product is not likely to cause confusion among ordinary purchasers.

31. Consumers encountering Momcozy's Accused Product would not reasonably mistake it for Tushbaby's product, nor believe that Momcozy's product is affiliated with or sponsored by Tushbaby.

32. The absence of Tushbaby's claimed design elements (*e.g.*, the flap on the front pocket) ensures that the two products have distinct visual impressions.

33. In view of the foregoing, Momcozy's marketing and sale of the Accused Product do not infringe the Tushbaby Trade Dress under the Lanham Act or any analogous state common law.

34. Momcozy is entitled to a declaratory judgment that its Accused Product, including the importation, manufacture, distribution, and sale thereof, does not violate Tushbaby's trade dress rights.

## COUNT II

### (Declaration of Invalidity and Order of Cancellation of U.S. Registration No. 7,489,071)

35. Counterclaim-Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 22 of this Counterclaim as if fully set forth herein.

36. A real, substantial controversy exists over the validity and enforceability of the Tushbaby Trade Dress.

37. Tushbaby relies on its U.S. Trademark Registration No. 7,489,071 to assert exclusive rights to the pocket-and-flap design, while Momcozy maintains that this purported trade dress is not legally protectable and that the registration should be cancelled.

38. Declaratory relief is necessary to resolve the parties' dispute regarding whether the Tushbaby Trade Dress is valid.

39. The Tushbaby Trade Dress does not function as a trademark or source identifier for the

product.

40. The claimed trade dress is merely a product design feature – a pocket with a flap on a baby carrier – rather than a distinctive symbol that consumers recognize as indicating the source of the product. Because this design is a part of the product itself and not inherently distinctive, it cannot serve as a protectable trademark absent a showing of acquired distinctiveness (secondary meaning).

41. As a non-exhaustive example, the pocket-and-flap configuration claimed by Tushbaby is functional in nature. The design contributes utilitarian advantages to the product: the front pocket provides convenient storage space for the user, and the flap helps secure items within the pocket. These are practical benefits that improve the product's utility.

42. A design that is dictated by usefulness and product performance is considered functional and is not eligible for trade dress protection.

43. The specific shape, size, and placement of Tushbaby's pocket and flap are driven by functional considerations.

44. For example, the dimensions and positioning of the pocket are chosen to maximize storage capacity and to fit ergonomically on the front of the hip carrier. The flap is designed to keep items secure. These features are not arbitrary or decorative; they are the result of practical engineering requirements for a baby carrier.

45. Because the design is optimized for utility (additional storage and ease of use), it confers a significant competitive advantage in terms of product functionality.

46. As another non-exhaustive example, the specific shape, size, and placement of Tushbaby's pocket and flap are also driven by functional considerations.

47. The dimensions and positioning of the pocket are chosen to maximize storage capacity

and to fit ergonomically on the front of the hip carrier. The flap is designed to keep items secure. These features are not arbitrary or decorative; they are the result of practical engineering requirements for a baby carrier. Because the design is optimized for utility (additional storage and ease of use), it confers a significant competitive advantage in terms of product functionality.

48. The specific shape, size, and placement of Tushbaby's pocket and flap are driven by functional considerations. The dimensions and positioning of the pocket are chosen to maximize storage capacity and to fit ergonomically on the front of the hip carrier. The flap is designed to keep items secure. These features are not arbitrary or decorative; they are the result of practical engineering requirements for a baby carrier. Because the design is optimized for utility (additional storage and ease of use), it confers a significant competitive advantage in terms of product functionality.

49. The pocket-with-flap configuration is a common design feature in the baby carrier industry. Many competing baby hip seat carriers produced by other companies include front pockets (with or without flaps) to provide storage for caregivers. Because this design is ubiquitous and driven by functional need, consumers are accustomed to seeing similar pockets on various brands of carriers. The prevalence of similar designs by multiple manufacturers confirms that the feature is standard and useful, rather than unique to Tushbaby or indicative of a single source.

50. In addition to being functional, the Tushbaby Trade Dress lacks secondary meaning in the marketplace. Product design trade dress cannot be inherently distinctive; it is protectable only if it has acquired distinctiveness by becoming associated in consumers' minds with a particular source. Here, there is no evidence that consumers perceive a baby carrier's front pocket-and-flap design as signifying "Tushbaby" as the source. Tushbaby's purported use of this design since approximately 2018 (about six years prior to registration) is not, by itself, enough to establish that

the public has come to recognize the design as a Tushbaby signature.

51. Upon information and belief, Tushbaby has not undertaken any "look-for" advertising or consumer education directing the public to recognize the pocket-and-flap design as a brand identifier for Tushbaby. Tushbaby has not provided (and does not have) consumer surveys or other evidence showing that a substantial portion of the purchasing public associates this design specifically with Tushbaby and no other source. In fact, given the common use of similar pocket designs by various brands, consumers are unlikely to attribute this feature to any single company. They view it as a functional element present in many baby carriers, not as a logo or mark.

52. Because the design is a commonplace feature and Tushbaby has not demonstrated that consumers connect this design exclusively with Tushbaby, the Tushbaby Trade Dress has not acquired distinctiveness (secondary meaning). Lacking secondary meaning, the claimed trade dress is not protectable under § 43(a) of the Lanham Act. The USPTO's issuance of a registration does not change the reality that the design has never truly functioned as a mark in the eyes of the public.

53. Momcozy has been, and continues to be, harmed by Tushbaby's assertion of the invalid Tushbaby Trade Dress. Tushbaby has used its purported trade dress rights and the '071 Registration as weapons to threaten Momcozy's business, interfere with Momcozy's sales, and attempt to exclude Momcozy from the market. By claiming a monopoly on a functional design, Tushbaby has unfairly impeded competition and caused Momcozy to incur substantial expenses and loss of business opportunities.

54. Accordingly, Momcozy seeks a declaratory judgment that the Tushbaby Trade Dress is invalid and not protectable.

55. Momcozy further seeks an order directing the cancellation of U.S. Trademark

Registration No. 7,489,071. Cancellation is warranted under 15 U.S.C. § 1119 because the registration was improperly granted to a functional design lacking secondary meaning, and maintaining it on the register would unjustly confer a competitive advantage on Tushbaby.

## COUNT III

### (Declaration of Non-infringement of U.S. Copyright Registration No. VA 2-360-715, VA 2-360-714, VAu 1-511-350, and VA 2-395-564)

56. Counterclaim-Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 22 of this Counterclaim as if fully set forth herein.

57. An actual controversy exists between the parties concerning Tushbaby's allegations of copyright infringement.

58. Tushbaby contends that Momcozy's promotional photographs of the Accused Product infringe Tushbaby's exclusive rights under Tushbaby's Copyrights (U.S. Copyright Registration Nos. VA 2-360-715, VA 2-360-714, VAu 1-511-350, and VA 2-395-564). Momcozy disputes these allegations and seeks a declaratory judgment to resolve the dispute.

59. Momcozy has not copied or appropriated any of Tushbaby's copyrighted photographs. To the contrary, Momcozy independently created the photographs it uses to market the Accused Product.

60. In or around 2023, Momcozy commissioned its own photoshoot for the Accused Product, hiring a professional photographer and a model.

61. During this photoshoot, numerous original photographs were taken featuring Momcozy's baby carrier in various poses, angles, and settings. These images were created by Momcozy from scratch as part of its promotional materials.

62. Prior to and during the creation of Momcozy's promotional photos, Momcozy had no knowledge of the specific content of Tushbaby's photographs covered by Tushbaby's Copyrights.

63. Momcozy did not have Tushbaby's images before it and did not refer to or base its photos on any imagery from Tushbaby. Momcozy's creative process was entirely independent.

64. Any similarity between Momcozy's photographs and Tushbaby's photographs (if any exist) is coincidental and stems from the fact that both sets of photos depict a similar type of product (a baby carrier), not from copying.

65. Among other reasons, because Momcozy's photos were independently created, they do not infringe Tushbaby's Copyrights.

66. Copyright infringement requires, among other things, copying of original elements of the plaintiff's work. Here, Momcozy did not copy Tushbaby's photos at all.

67. Additionally, Momcozy's photographs differ in their creative choices — featuring different models, backgrounds, arrangements, and angles — resulting in a distinct overall look and feel. Any coincidental overlap in subject matter (a person using a baby carrier) is driven by the nature of the product and not by any protectable expression owned by Tushbaby.

68. In view of Momcozy's independent creation of its promotional images, there is no violation of Tushbaby's exclusive rights under 17 U.S.C. § 106. Momcozy's use of its own photographs does not infringe any of Tushbaby's Copyrights. Momcozy is entitled to a declaratory judgment that its acts — including the creation, display, and distribution of its product photographs — do not infringe U.S. Copyright Registration Nos. VA 2-360-715, VA 2-360-714, VAu 1-511-350, and VA 2-395-564, or any other rights of Tushbaby under the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff prays for judgment against Counterclaim-Defendant as follows:

1. Declaring that the importation, manufacturing, marketing, distribution, sale, and/or any

12

other form of commercial use of the Baby Hip Seat Carrier Products do not infringe the Tushbaby Trade Dress U.S. Registration No. 7,489,071;

2. Declaring that the Tushbaby Trade Dress U.S. Registration No. 7,489,071, is invalid;

3. Ordering cancellation of the U.S. Registration No. 7,489,071;

4. Declaring that the importation, manufacturing, marketing, distribution, sale, and/or any other form of commercial use of the Baby Hip Seat Carrier Products do not infringe the Tushbaby Copyright Office Registrations No. VA 2-360-715, VA 2-360-714, VAu 1-511-350, and VA 2-395-564;

5. Awarding Counterclaim-Plaintiff recovers its costs and reasonable attorneys' fees and costs incurred in this action from Counterclaim-Defendant;

6. Awarding pre- and post- judgment interest; and

7. Awarding Counterclaim-Plaintiff such other and further relief as this Court deems is just and proper.

## Jury Trial Demand

Counterclaim-Plaintiff hereby demands a jury trial on all issues so triable.

April 2, 2025

/s/ Luca L. Hickman, Esq.
Ruoting Men
GLACIER LAW LLP
41 Madison Ave, Suite 2529
New York, NY 10010
Ruoting.men@glacier.law
212-729-5049

Brandon T. Holmes, Esq. (FBN 1007975)
Luca L. Hickman, Esq. (FBN 118731)
Dinsmore & Shohl LLP
Tampa City Center
201 North Franklin Street, Suite 3050
Tampa, Florida 33602

Telephone: (813) 543-9835
Email: luca.hickman@dinsmore.com

***Attorneys for Defendant***